```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MINNESOTA

----------------------------------------------------------------
                              )  COURT FILE
UNITED STATES of AMERICA      )  NO. 19-CR-141 (PJS/SER)
                              )
         vs.                  )  Courtroom 3C
                              )  Thursday, July 11, 2019
CORNETT GOLDEN                )  St. Paul, Minnesota
                              )  9:00 A.M.
----------------------------------------------------------------
```

## MOTIONS HEARING

BEFORE THE HONORABLE STEVEN E. RAU
UNITED STATES MAGISTRATE JUDGE


A P P E A R A N C E S:

For the Government:    **OFFICE OF THE U.S. ATTORNEY**
                       By:  ALEXANDER D. CHIQUOINE
                            CHARLES J. KOVATS, JR.
                            Assistant U.S. Attorneys
                       600 United States Courthouse
                       300 South Fourth Street
                       Minneapolis, Minnesota  55415

For the Defendant:     **WOLD MORRISON LAW**
                       By:  AARON J. MORRISON, ESQUIRE
                       331 Second Avenue South - Suite 705
                       Minneapolis, Minnesota  55401

                       **JONES DAY**
                       By:  KRISTIN K. ZINSMASTER, ESQUIRE
                       4950 Wells Fargo Center
                       90 South Seventh Street
                       Minneapolis, Minnesota  55402


              **TIMOTHY J. WILLETTE, RDR, CRR, CRC**
        Official Court Reporter - United States District Court
         Warren E. Burger Federal Building & U.S. Courthouse
              316 North Robert Street - Suite 146
                   St. Paul, Minnesota  55101
                         651.848.1224

1       (9:00 a.m.)

2                     **P R O C E E D I N G S**

3                         **IN OPEN COURT**

4       (Defendant present)

5              THE COURT:  Thank you.  Good morning.  Please be

6   seated.

7              We're here this morning on the matter entitled

8   United States of America versus Cornett Golden for a motions

9   hearing.

10             Would counsel note their appearances for the

11  record, starting with the Government.

12             MR. CHIQUOINE:  Good morning, Your Honor.

13  Alexander Chiquoine on behalf of the United States.  With me

14  at counsel table is Charlie Kovats and also Sarah Nelson,

15  who's an intern in our office.

16             THE COURT:  Good morning.

17             MR. MORRISON:  Good morning, Your Honor.  Aaron

18  Morrison appearing on behalf of Mr. Golden with Kristin

19  Zinsmaster.

20             THE COURT:  Good morning.

21             All right.  It seemed originally we were going to

22  have some testimony.  Now that there's been -- sounds like

23  there's been a change of heart, how do you want to proceed

24  here?

25             MR. MORRISON:  Judge, we certainly are not going

1  to call witnesses.  I think that the Government's in a tough
2  position here in their decision not to call witnesses on the
3  suppression issues.  I understand I think from their moving
4  papers they're going to attempt to just proffer evidence
5  which we're going to certainly object to.  There are a
6  couple of the exhibits that were listed in their moving
7  papers that we would agree to their admission, and if the
8  Government's not offering any other testimony, we would ask
9  for an opportunity to brief to demonstrate we've met our
10 initial burden and the Government has not.
11          THE COURT:  Why don't we -- let's do this:
12          Let's first address whether you've reached any
13 agreement with respect to what I traditionally call
14 non-dispositive motions, then discuss what evidence,
15 Mr. Morrison, you believe the Government -- you don't have
16 any objection to and what evidence you do have an objection
17 to and the basis for that, and then we can discuss whatever
18 briefing is necessary, okay?
19          So why don't we first start with the
20 non-dispositives.
21          MR. MORRISON:  I think we're actually in pretty
22 much agreement on them.
23          The Government has indicated on their 404(b)
24 evidence they'll -- they agree to make disclosures within 30
25 days -- and correct me if I'm wrong, Government, as we go

1   along here, but -- so I think that one's fine.
2            The standard -- Government understands their
3   obligations under **Brady** and *Giglio*.
4            Motion to retain agent notes, the Government
5   indicates it's moot because they're going to do that.  I
6   still would prefer an order directing the Government to have
7   their agents retain rough notes.
8            The only outstanding issue on the non-dispositives
9   would be the disclosure dates for expert witnesses.  I'm
10  fine with the joint disclosure 30 days out.
11           MR. CHIQUOINE:  That conforms with everything that
12  we filed in papers.  The Government agrees.
13           THE COURT:  All right.  So we'll issue an order
14  that reflects that.
15           Why don't we now move to the exhibits and what you
16  intend to proffer and what the defendant objects to.
17           MR. CHIQUOINE:  Your Honor, the Government today
18  was prepared to proffer the seven exhibits that were
19  attached to its briefing, the omnibus response in
20  opposition.  They consist of three videos.
21           One consists of the TCF surveillance footage.
22  That's Exhibit A.
23           Exhibit B is a radio run of the officer radio
24  traffic during their response to the TCF robbery on
25  March 27th.

1                    Exhibit C is a Google map showing the GPS tracker
2       route as it was tracked that day.
3                    Exhibit D is video from the bus where Mr. Golden
4       was apprehended on March 27th.
5                    Exhibit E is a photo from the TCF surveillance
6       video that police used to identify Mr. Golden on that day.
7                    F is a side-by-side showing that photo, the one in
8       Exhibit E, along with Mr. Golden's booking photo from that
9       day.
10                   And then finally, Exhibit G is a videotape of the
11      confession.
12                   THE COURT:  Okay.  All right.
13                   Mr. Morrison, which of those do you object to and
14      which do you have no objections to?
15                   MR. MORRISON:  So I have no objections to Exhibit
16      D, which is the bus video, and Exhibit G, which is the
17      interrogation video.  I would object to the rest of them and
18      I'd like to make a brief argument --
19                   THE COURT:  You may.
20                   MR. MORRISON:  Obviously this is becoming a new
21      trend in the last number of months in our district, it
22      appears, at least in my experience, of the U.S. Attorneys
23      making an argument that defendants when they raise
24      constitutional issues, Fourth, Fifth or Sixth Amendment
25      issues, that we have not raised with specificity or there's

1   no issues there that require testimony, and have, it seems
2   to me, started to attempt to do what they're doing here
3   today, not put a live witness on the stand to testify about
4   the evidence or to introduce the evidence, but instead to
5   attempt to transform our district practice into a written
6   motion hearing practice versus having live testimony.  And
7   oftentimes -- and I'm certainly probably guilty of this
8   too -- sometimes our initial suppression motions are fairly
9   thin and are fairly -- maybe don't always reach the burden
10  needed.
11          However, in looking at this issue and looking
12  through kind of, it seems, the history of this district and
13  the U.S. Attorney's Office attempting to circumvent live
14  witnesses at motion hearings, I was struck by a 1999 R&R by
15  Judge Noel in which he stated essentially that the reason
16  why we have motion hearings with live witnesses is because
17  the defendant is not in a position to have often the
18  evidence that is crucial to these kinds of hearings.  You
19  don't always capture everything that happened in a police
20  report or what happened before a stop happens without that
21  live testimony, and a defendant can't get that through
22  Rule 16, especially in this district where much of the
23  Jencks is not provided.  So we are left with a vacuum.
24          And so for good reason Judge Noel said -- and I
25  think it's been continued to this day in our district -- a

1  defendant has a duty to at least allege in their moving
2  papers and make an argument that there are facts in
3  controversy that give rise to a constitutional violation, a
4  suppression issue.  In this case, I believe, in our three
5  suppression motions we've done that, and once we've met that
6  hurdle, it is then the Government's burden of production to
7  prove that the evidence they intend to use at trial was
8  permissibly obtained without a constitutional violation.
9          And I think the problem is with many of the
10 Government's exhibits that they're offering here, is that we
11 have to take it on the Government's word, on a U.S. Attorney
12 standing up and proffering how the exhibit was used, how it
13 was interpreted, versus hearing an officer interpret it.
14         We also have to take it on the Government's word,
15 for example, in Exhibit E, which is a photograph of the
16 robber at the TCF Bank that allegedly was used by police to
17 identify Mr. Golden on the bus.  Well, how do we know that?
18 We're taking it at the Government's word.  And I don't
19 believe the Government's lying, but that's the purpose of a
20 hearing.  That's the purpose of putting witnesses on the
21 stand under oath so that we know the actual foundation of
22 this exhibit.  And I'm not suggesting hearsay isn't
23 permissible.  They can put the case agent on the stand to do
24 all this, but at least we have a witness on the stand that
25 we can cross-examine, that we can collect some facts about

1   the pieces of evidence and there's an actual record under
2   oath versus just attorney proffers saying, "This is the
3   photo that was used to identify your client."  I mean, we
4   need more than that.  The record needs more than that.
5           And I can't agree to the remaining exhibits that
6   are offered by the Government because of these issues.  I
7   think in the exhibits that I've agreed to they clearly --
8   they would have been introduced with live witnesses, they
9   are clearly are what they are, and I can agree to those, but
10  the remainder of it I cannot agree to.
11          And I understand the Government has made its
12  intent clear that it does not intend to call witnesses, so I
13  would object to any other evidence being put forth in this
14  record.  I'd ask for an opportunity to brief these issues
15  and to show that the Government -- that the defendant has
16  made his initial burden to show that there's a controversy,
17  and to argue that the Government just has simply not
18  produced sufficient evidence to support anything but
19  suppression of these three issues.
20          MR. CHIQUOINE:  Good morning, Your Honor.
21          THE COURT:  Good morning.
22          MR. CHIQUOINE:  The Government would disagree with
23  defense counsel's initial point in that he believes that
24  they have met their initial burden, which he doesn't seem to
25  deny is on the defendant, to raise some genuine issue that

1  relates to suppression. He does have that burden that the
2  *Williams* case shows. And moreover, that burden, although
3  not substantial, it's more than nothing. It's more than
4  three sentences in a page-and-a-half-long motion unsupported
5  by any affidavits, declarations, or any piece of evidence.
6  Eighth Circuit case law clearly says that cursory
7  allegations unsupported by a record are not enough to
8  warrant an evidentiary hearing, and certainly not one with
9  live witnesses. That's the *Stevenson* case.
10  All of the issues that are raised in the
11  suppression motions can be settled as a matter of law based
12  on the evidence that the Government proffers here today.
13  Defense counsel raised concern about taking the
14  Government's word that some exhibits are what they are.
15  There's two problems with this.
16  First, the defendant is asking for a double
17  standard. The defendant wants you to take him at his word
18  that the allegations, cursory as they may be, in his moving
19  papers are fact such that he has overcome his initial
20  burden. But when the Government proffers that, for
21  instance, Exhibit E is the photo used by police taken from
22  the TCF surveillance video to identify Mr. Golden on the
23  bus, that that somehow does not constitute evidence under
24  the circumstances. It can't be those two things. The
25  Government can't be held to one burden while the defendant

1       is held to another one.

2               We also have the issue here -- so far there have

3       not been any authenticity issues raised with any of the

4       exhibits that the Government has offered here.  They have

5       all be been produced in discovery, the defendant has had

6       them and was aware that the Government was planning to use

7       those exhibits at today's hearing.

8               And also, Your Honor, an evidentiary hearing here

9       is unnecessary on at least some of the motions by the

10      defendant because they can be settled as a matter of law.

11              For instance, the motion to suppress the show-up

12      identification, taking the facts as the defendant sets them

13      out in his motion paper, case law is abundantly clear that

14      the presence of police and the defendant in handcuffs during

15      identification, while suggestive, is not impermissibly so.

16              So even taking the record as the defendant would

17      like to have it, the case law, including the very case law

18      that they cite in their moving paper, stands against them.

19      Under those circumstances, there isn't a need to have an

20      evidentiary hearing and the Court already has the record

21      that it needs to be able to develop that or to rule on that

22      motion.

23              I'd also like to just point out that this here is

24      a motion -- this is a hearing on motions to suppress.  It is

25      not a discovery hearing.  It's not an opportunity for the

1  defendant to go looking for discovery.  It's to rule and
2  make arguments on the defendant's suppression motions.  What
3  Mr. Morrison is essentially advocating is that this is a
4  discovery-generating and gathering opportunity for the
5  defense.  And although Judge Noel may have written --
6              THE COURT:  Clearly that's not a shock to you, is
7  it?
8              MR. CHIQUOINE:  No, it's not a shock, but simply
9  because it's not a shock doesn't mean that it's the proper
10 procedure under the case law as it exists and as was laid
11 out in the Government's moving papers.
12             Thank you.
13             THE COURT:  Thank you.
14             Mr. Morrison, I'm going to give you an opportunity
15 to brief this and I'll give the Government an opportunity to
16 respond.  Do you have something else you want to say?
17             MR. MORRISON:  No, I can save it for briefing,
18 certainly.
19             THE COURT:  You know, I have long struggled -- and
20 I don't think I've had conversations with Mr. Kovats, but
21 I've had conversations with the Federal Defender's Office
22 and the U.S. Attorney's Office about the nature of the
23 motion practice in this district with respect to suppression
24 motions.
25             And simply because of the custom and practice in

1   this district, what we more often than not do is have --
2   even though I don't like it because I don't think it
3   adequately prepares the judge who's going to make the call
4   at the hearing -- the sort of *pro forma* motions that
5   Mr. Morrison makes, okay?  And the Government sort of makes
6   their usual *pro forma* response.  And then witnesses are
7   called and everyone is, you know, illuminated as to what the
8   real issue is and we have post-hearing briefing.
9           Now, as much as I didn't like that, that seemed to
10  work the best and it truncated the motion-practice hearing
11  probably a little bit, but it was an effective use of both
12  the witnesses and the testimony.
13          So I am somewhat sympathetic to what Mr. Morrison
14  is saying, but I'm not certain that it's necessarily true in
15  this case, because these are things -- they're not being
16  raised about -- there's no authenticity issues raised about
17  the video, the radio run, the Google map, or things like
18  that.  So I'm a little troubled about raising this
19  particular issue when real testimony isn't necessarily
20  required for the low standard of probable cause or things
21  like that.
22          Having said that, I would like to hear from
23  Mr. Morrison and then the Government has an opportunity to
24  respond.  I don't like the idea of sort of short-circuiting
25  the notion of having live testimony at a suppression

1   hearing.  I don't as a judge.  I really don't.  I recognize,
2   however, that in this instance this may be more expeditious
3   with some of the exhibits that are being offered.
4           So that's neither here nor there in terms of how
5   I'm going to rule on this.  It's just sort of my intuitive
6   initial response.
7           How much time do you need, Mr. Morrison?
8           MR. MORRISON:  Two weeks, Judge?
9           THE COURT:  And the Government obviously would
10  like to respond.
11          MR. CHIQUOINE:  Yes, please, Your Honor.  Two
12  weeks would be sufficient.
13          THE COURT:  All right.  So we'll consider it
14  submitted four weeks from now.
15          Is there anything else that anyone wants to add to
16  the record today?
17          MR. CHIQUOINE:  Just briefly, Your Honor.
18          I would argue here that the Government's response
19  has not been *pro forma*.  We submitted quite a bit of
20  documentary evidence and also 27 pages of substantive
21  briefing on the subjects raised by Mr. --
22          THE COURT:  In this instance you're correct.  I'm
23  describing what I've seen generally, not necessarily here,
24  okay?
25          MR. CHIQUOINE:  Understood.

1  THE COURT:  And, you know, Mr. Morrison was quite
2  honest about the fact that, you know, the defense lawyers
3  traditionally offer three sentences objecting to something
4  because they don't really have a sense of how the testimony
5  is going to come out or what the witness is going to say or
6  the like.  So you're right, in this particular instance it's
7  not *pro forma*.  I'm making an observation about it more
8  generally, okay?
9  MR. CHIQUOINE:  Thank you, Your Honor.
10 THE COURT:  Thank you.  Anything else?
11 MR. MORRISON:  No, Your Honor.
12 THE COURT:  Thank you.  We're in recess.
13 (Proceedings concluded at 9:20 a.m.)
14 *    *    *    *

CASE 0:19-cr-00141-PJS-ECW   Doc. 41   Filed 08/23/19   Page 15 of 15

# C E R T I F I C A T E

I, **TIMOTHY J. WILLETTE**, Official Court Reporter for the United States District Court, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes, taken in the aforementioned matter, to the best of my skill and ability.

*/s/ Timothy J. Willette*

**TIMOTHY J. WILLETTE, RDR, CRR, CRC**
Official Court Reporter - U.S. District Court
Warren E. Burger Federal Building & U.S. Courthouse
316 North Robert Street - Suite 146
St. Paul, Minnesota  55101
651.848.1224