# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,　　　　　　Case No. 19-CR-0141 (PJS/SER)

　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　ORDER

CORNETT GOLDEN,

　　　　　　Defendant.

---

Alexander D. Chiquoine and Charles J. Kovats, Jr., UNITED STATES
ATTORNEY'S OFFICE, for plaintiff.

Aaron J. Morrison, WOLD MORRISON LAW; and Kristin K. Zinsmaster,
JONES DAY, for defendant.

Defendant Cornett Golden is charged with two counts of bank robbery in
violation of 18 U.S.C. § 2113(a). This matter is before the Court on Golden's objection to
Magistrate Judge Steven E. Rau's August 29, 2019 Report and Recommendation
("R&R"). Judge Rau recommends denying Golden's motions to (1) suppress evidence
obtained as a result of the allegedly unlawful seizure and search of his person [ECF
No. 23]; (2) suppress statements that he made during a custodial interrogation [ECF
No. 24]; and (3) suppress witness identifications that were made at the scene of his
arrest [ECF No. 25].

The Court has conducted a de novo review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). Based on that review, the Court adopts the R&R to the extent that it is consistent with this order and denies Golden's motions to suppress.

## A. Background

Golden is charged with robbing Firefly Credit Union on March 22, 2019, and TCF Bank on March 27, 2019. ECF No. 1. Shortly after the second robbery, police stopped a city bus on which Golden was a passenger, handcuffed him, and removed him from the bus. A subsequent search of Golden yielded cash containing a GPS tracker. Although there is no record evidence concerning any witness identifications, the parties agree that, after Golden's arrest, the police brought three witnesses from TCF Bank to view Golden at the scene of his arrest, and the witnesses made statements tending to identify him as the robber. Golden was then transported to the police station where, after being given *Miranda* warnings, he incriminated himself with respect to both robberies. According to the timestamps on the video exhibits of these events, all of this took place within the space of a few hours: The robbery of the TCF Bank occurred shortly after 3:30 pm, police arrested Golden at about 4:15 pm, and the interrogation began at about 5:30 pm and lasted about an hour and ten minutes.

*B.  Analysis*

Before addressing the merits of Golden's suppression motions, the Court must address several threshold issues that have arisen because the government chose to devote its efforts in this case to arguing about how much work the government must do to defeat a suppression motion rather than to litigating the merits of the suppression motions pending before the Court.  The government sharply (at times almost disrespectfully) argued to Judge Rau that Golden's motions should be summarily denied because, according to the government, Golden failed to identify specific constitutional violations and failed to cite specific evidence showing that there are genuine factual issues.  At a minimum, the government argued, Golden was not entitled to an evidentiary hearing.  The Court regards these arguments as forfeited, as the government did not timely object to Judge Rau's rejection of them.  The Court further regards the latter argument as moot, as Judge Rau held an evidentiary hearing (although neither party opted to call any witnesses).

That said, the Court is entirely in agreement with Judge Rau and rejects the government's position that a suppression motion must be summarily denied whenever a defendant fails to offer or cite evidence to support it.  In this case, for example, Golden contends that police officers seized and searched him in violation of the Fourth Amendment.  Because the officers lacked a warrant, the government bears the burden

of establishing that the seizure and search were lawful.  *Beck v. Ohio*, 379 U.S. 89, 97 (1964) ("when the constitutional validity of that [warrantless] arrest was challenged, it was incumbent upon the prosecution to show with considerably more specificity than was shown in this case what the informer actually said, and why the officer thought the information was credible"); *United States v. Andrews*, 454 F.3d 919, 922 (8th Cir. 2006) ("The lack of such evidence [of a traffic violation] would mean that the government had failed in its burden to prove that Deputy Brown had probable cause to stop Mr. Andrews's car, and the court would be obliged to grant Mr. Andrews's motion to suppress."); *United States v. Kennedy*, 427 F.3d 1136, 1140 (8th Cir. 2005) ("In the case of a warrantless search, the government bears the burden of establishing an exception to the warrant requirement.").

In this case, the facts that place the burden on the government—a warrantless seizure of Golden and a warrantless search of his person—are undisputed.  Golden therefore need not present *any* evidence to avoid summary denial of his motion to suppress evidence obtained as a result of the seizure and search of his person.  To the contrary, in the absence of any other evidence, the Court would be obligated to grant Golden's motion and suppress the evidence.  *Andrews*, 454 F.3d at 922.

In arguing to the contrary, the government relies on cases that are plainly distinguishable.  For example, the government relies heavily on *United States v.*

*Williams*, 690 F. Supp. 2d 829 (D. Minn.), *aff'd*, 397 F. App'x 264 (8th Cir. 2010) (per curiam). But the district court in *Williams* did not summarily deny the defendant's motions. To the contrary, the court held an evidentiary hearing at which the government presented witnesses and submitted exhibits. *Id.* at 837 & n.1. The court's comments concerning the defendant's initial burden of production related to only one of the suppression motions, which sought disclosure of "any incidences of illegal surveillance to which the Defendant may have been subjected" and suppression of "all such evidence as being illegally obtained . . . ." *Williams*, No. 09-CR-0298 (MJD/FLN), ECF No. 283 (motion filed Dec. 1, 2009); *see Williams*, 690 F. Supp. 2d at 848-49 (citing ECF No. 283).

The government also relies on *United States v. Edwards*, 563 F. Supp. 2d 977 (D. Minn. 2008), *aff'd sub nom. United States v. Bowie*, 618 F.3d 802 (8th Cir. 2010). As in *Williams*, however, the *Edwards* court did not summarily deny the defendant's motions, but instead held an evidentiary hearing. *Id.* at 986. And like the comments of the court in *Williams*, the *Edwards* court's comments concerning the defendant's initial burden were in response to generic and conclusory motions that "[left] the Government and the Court to guess at the possible bases for more than half of his motions." *Id.* at 994.

Golden's motions are nothing like the barebones motions in *Williams* and *Edwards*. Golden did not simply float the possibility of hypothetical constitutional

violations or contend that evidence was illegally acquired without explaining why. Instead, he identified specific conduct that he contended was unconstitutional (the warrantless seizure and search of his person) and explained the basis for this claim (that the officers violated the Fourth Amendment because they lacked probable cause to arrest him). Neither the Court nor the government was left to "guess" at anything.

The government also relies on an 80-year-old Supreme Court case—*Nardone v. United States*, 308 U.S. 338 (1939)—in which the defendants established that the government had illegally intercepted their wire communications. The issue in *Nardone* was whether the exclusionary rule should apply to more than just "the exact words heard through forbidden interceptions." *Id.* at 340. In holding that the lower courts had erred by applying the exclusionary rule so narrowly, the Court noted in passing that "[t]he burden is, of course, on the accused in the first instance to prove to the trial court's satisfaction that wire-tapping was unlawfully employed." *Id.* at 341.

The government reads too much into this passing comment. To begin with, the comment was dicta, as the defendants had already proved that the interceptions were illegal, and the issue of who had the burden on that issue was not before the Court. Setting that aside, the context of *Nardone* is quite different from the context of this case. The defendants in *Nardone* succeeded in suppressing the interceptions because those

interceptions violated federal statutory law.[1]  *Id.* at 339.  That the Court in *Nardone*

imposed a burden on the defendants to establish a federal statutory violation has little

relevance to this case, in which the government unquestionably bears the burden of

showing that the seizure and search of Golden did not violate the Fourth Amendment.

The other cases on which the government relies are also distinguishable or

simply fail to support the government's position.  *See, e.g.*, *United States v. Coleman*, 923

F.3d 450, 455 (6th Cir. 2019) (imposing burden on the defendant to show that the area

where his vehicle was parked was part of his home's curtilage; district-court docket

indicates an evidentiary hearing was held, *see Coleman*, 17-CR-0136 (PLM), ECF No. 48

(W.D. Mich. Aug. 31, 2017)), *petition for cert. filed* (U.S. July 31, 2019) (No. 19-5445);

*United States v. Shrum*, 908 F.3d 1219, 1229 (10th Cir. 2018) (reversing denial of

suppression motion and explaining that, after the defendant meets his initial burden of

showing a warrantless seizure, the government bears the burden of proving the validity

of the seizure); *United States v. Touset*, 890 F.3d 1227, 1231-37 (11th Cir. 2018) (affirming

denial, after an evidentiary hearing, of motion to suppress and holding that border

searches of electronic devices do not require any suspicion); *United States v. Young*, 835

---

[1]Not until nearly three decades later did the Court hold that wiretapping is
subject to the constraints of the Fourth Amendment.  *See Katz v. United States*, 389 U.S.
347 (1967).

F.3d 13, 14-15 (1st Cir. 2016) (reversing denial of suppression motion on which an evidentiary hearing was held).

Again, Golden identified specific alleged constitutional violations and provided a basic summary of his arguments. The government nitpicks at minor factual discrepancies between Golden's initial account of his seizure and the facts as shown in the bus video. The fact remains, however, that Golden clearly alleged that the officers lacked probable cause to arrest or search him and, as noted, it is undisputed that the officers did not have a warrant. In the context of this relatively simple case, this was sufficient to place the burden on the government to come forward with evidence that the seizure and search were lawful.

The Court also rejects the government's argument that Golden was not entitled to an evidentiary hearing. Because Golden made sufficiently specific claims of constitutional violations on which the government bears the burden of proof, an evidentiary hearing was warranted in order to give Golden the opportunity to counter the government's evidence—at least in this case, in which the government's evidentiary presentation regarding the validity of the seizure and search left much to be desired and was wide open to challenge.

In resisting this conclusion, the government cites several cases for the general proposition that it is within the district court's discretion not to hold an evidentiary

hearing on a suppression motion.  *See, e.g., United States v. Hardison*, 859 F.3d 585, 589 (8th Cir. 2017).  That is true, but it does not change the fact that a hearing was warranted under the circumstances of *this* case.  Indeed, district courts have discretion in this area precisely because the decision whether to hold an evidentiary hearing depends on the particular facts and circumstances of each case.  Here, for example, because the government sought to meet its burden by relying solely on a set of exhibits whose relevance and authenticity were open to question (due to the absence of any testimonial evidence), a hearing was necessary to ensure that Golden had an opportunity to test the government's evidence.

The government also cites several cases concerning the standards for determining whether an evidentiary hearing is required on a motion under 28 U.S.C. § 2255, *Covey v. United States*, 377 F.3d 903 (8th Cir. 2004), *Rogers v. United States*, 1 F.3d 697 (8th Cir. 1993) (per curiam); on a motion for a new trial, *United States v. Connolly*, 504 F.3d 206 (1st Cir. 2007); or on a claim of selective prosecution, *United States v. Aanerud*, 893 F.2d 956 (8th Cir. 1990).  Those cases are irrelevant, as they arise in different legal contexts.  The heavy burden on a defendant who seeks to overturn a conviction or interfere with a prosecutor's traditionally broad discretion to institute criminal proceedings has little to do with the standard for granting an evidentiary

hearing on a suppression motion with respect to which the government bears the burden of proof.

Finally, the government cites *United States v. Stevenson*, 727 F.3d 826 (8th Cir. 2013), for the proposition that a defendant is not entitled to an evidentiary hearing unless he first cites evidence demonstrating the existence of a factual dispute. *Stevenson* is distinguishable, however. In *Stevenson*, the defendant was seeking to suppress a search conducted by a private company. *Id.* at 828-29. The defendant contended that an evidentiary hearing was necessary to determine whether the company acted as an instrument of the government, *id.* at 830, an issue on which *he* bore the burden of proof, *United States v. Highbull*, 894 F.3d 988, 992 (8th Cir. 2018) ("A defendant bears the burden of proving by a preponderance of the evidence that a private party acted as a government agent."). Again, here, unlike in *Stevenson*, the undisputed facts place the burden of proof on the *government* with respect to the lawfulness of the seizure and search.

It is true that, as a general matter, a defendant bears an initial burden to show that evidence should be suppressed. *See Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984). Golden easily met his initial burden in this case, however, as there is no dispute that the government had no warrant to seize or search him. *Id.* (government bears burden to justify warrantless search). The Court emphatically rejects the

government's contention that it can meet its burden to show that an admittedly

warrantless seizure and an admittedly warrantless search were constitutional by

introducing *no evidence whatsoever*—unless the defendant first comes forward with

evidence that the seizure and search were unconstitutional.

That being said, the Court does not agree with Golden that, in the absence of live

testimony, Judge Rau's reliance on the government's evidentiary submissions violated

his due-process rights.[2]  Courts are not bound by the rules of evidence when making

preliminary determinations as to the admissibility of evidence.  Fed. R. Evid. 104(a),

1101(d)(1); *United States v. Raddatz*, 447 U.S. 667, 679 (1980) ("[T]he interests at stake in a

suppression hearing are of a lesser magnitude than those in the criminal trial itself.  At a

suppression hearing, the court may rely on hearsay and other evidence, even though

that evidence would not be admissible at trial."); *United States v. Matlock*, 415 U.S. 164,

172-73 (1974) ("it should be recalled that the rules of evidence normally applicable in

---

[2]The government is of course correct that it is not obligated to offer live
testimony in response to a motion to suppress, even when an evidentiary hearing is
warranted.  As the government argues, "the type and extent of evidence the
Government offers to meet its burden is entirely within its purview to decide."  ECF
No. 44 at 18 n.9.  But the government is most certainly mistaken in claiming that calling
live witnesses would have been a waste of time in *this* case.  As discussed below, the
government has just barely met its burden to show that the seizure and search of
Golden were legal.  The Court is confounded that the government, rather than putting
on an hour or so of straightforward testimony, instead chose to create numerous hours
of work for this Court and the parties and to put at grave risk its ability to hold Golden
accountable for his alleged crimes.

criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence"); *United States v. Stepp*, 680 F.3d 651, 669 (6th Cir. 2012) ("At a suppression hearing, we would expect the district court to err on the side of considering more, not less, information . . . .").

Golden was afforded an evidentiary hearing at which he had a full opportunity to present whatever evidence he thought was relevant. Not surprisingly, he does not cite any authority that would support a finding that his right to due process was violated under these circumstances. *Cf. United States v. Kellogg*, 202 F. App'x 96, 102 (6th Cir. 2006) (rejecting defendant's procedural challenge to the district court's reliance on hearsay over his live testimony). The fact that some of the government's evidence may lack foundation or may otherwise be questionable merely goes to the weight or sufficiency of the evidence; the government does not somehow violate the Due Process Clause by introducing evidence that may have little probative value or may be easily impeached. If it did, most convictions following trials could not stand.

The Court now turns to the merits of Golden's motions to suppress. The Court emphasizes that, although the rules of evidence do not apply in suppression proceedings, this does not mean that there are no standards whatsoever. The evidence on which the Court relies in ruling on a suppression motion must still be sufficiently reliable and probative. *See United States v. Boyce*, 797 F.2d 691, 693 (8th Cir. 1986) ("the

trial court may accept hearsay evidence at a suppression hearing if the court is satisfied that the statements were made and that there is nothing to raise serious doubt about their truthfulness"); *Stepp*, 680 F.3d at 668 ("Even at a suppression hearing . . . a trial court's findings must be supported by competent and credible evidence." (cleaned up)); *Kellogg*, 202 F. App'x at 102 ("Such hearsay evidence, like all admitted evidence, must have some probative value, and a district court would clearly err if its decision were based solely on evidence that was not competent and credible." (cleaned up)); *United States v. Schaefer*, 87 F.3d 562, 570 (1st Cir. 1996) ("a judge presiding at a suppression hearing may receive and consider any relevant evidence, including affidavits and unsworn documents *that bear indicia of reliability*" (emphasis added)).

### 1. Seizure and Search

As noted, Golden first moves to suppress evidence obtained as a result of his seizure, which he contends was unsupported by probable cause. The government counters that the police had ample grounds to detain Golden. Specifically, the government contends that the police obtained a description of Golden from witnesses at the TCF Bank, tracked his location using the GPS tracking device that was embedded in the stolen cash, set off an alarm embedded in the cash that could be heard on the bus, and used a still photo from the bank's surveillance video to identify him at the scene.

If the government had offered even a modicum of testimonial support for its contentions, this would be an easy case. The government chose not to do so, however. Instead, the government offered only the following seven exhibits:

1. Surveillance video of the robbery at TCF Bank (Exhibit A);

2. A document purporting to contain the record of police-radio transmissions following the March 27 robbery, which the government refers to as the "radio run" (Exhibit B);

3. A map purporting to show the route of the GPS tracking device following the March 27 robbery (Exhibit C);

4. A video from the bus on which Golden was a passenger and from which he was seized (Exhibit D);

5. A still photo from the TCF Bank surveillance video (Exhibit E);

6. A side-by-side comparison of the photo from Exhibit E with Golden's booking photo (Exhibit F); and

7. A video of Golden's custodial interrogation (Exhibit G).

The bus video (Exhibit D)—to which Golden does not object—is the most direct evidence concerning Golden's seizure. By itself, however, this video does not establish either probable cause or reasonable suspicion, as all of the officers' actions are completely without context. And much of the remaining evidence does little or nothing

to provide that context.  For example, the government failed to offer any evidence that any officer was aware of the bank video (Exhibit A); without such evidence, the video is close to irrelevant.  Likewise, the government offers nothing to establish that the still photo in Exhibits E and F was the photo that officers used to identify Golden on the bus. In fact, the government's evidentiary presentation is so full of holes that the Court initially decided to grant Golden's motion to suppress.  It is one thing to rely on hearsay; it is quite another to offer *no evidence whatsoever* of key facts (such as whether any officer had reviewed the bank video or seen the still photo before Golden was arrested).

Most significantly, the Court was initially inclined to disregard the radio run (Exhibit B).  The government did not provide any foundation for this document, nor any direct evidence about the identity of the officers whose communications it memorializes (or who otherwise had access to it), nor any explanation of what kind of communications—oral? textual?—it memorializes.  And without the radio run, the government could not establish reasonable suspicion, much less probable cause. Indeed, the radio run is the only evidence in the record that a robbery at a TCF Bank was reported to the police.  Moreover, the radio run provides the only evidence that the suspect was possibly armed—a necessary predicate to conducting a pat-down search for weapons during a stop conducted under *Terry v. Ohio*, 392 U.S. 1 (1968).  *See United*

*States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015) ("In conducting a *Terry* stop, the officer may make a protective pat-down search if he has a reasonable, articulable suspicion that the person may be armed and presently dangerous." (cleaned up)).

After carefully considering the radio run in light of the bus video, however, the Court finds that the video sufficiently corroborates the radio run to permit the Court to rely on the latter. The statements in the radio run generally narrate an attempt to locate the robber of the TCF Bank using a GPS tracker located in the stolen cash. The description of the robber in the radio run matches the appearance of a man in the bank video.[3] Eventually the officers realize that the tracker is on a city bus. Toward the end

_____

[3]At the evidentiary hearing, Golden stated that he objected to every exhibit except the bus video and the video of his custodial interrogation. ECF No. 41 at 5. In his post-hearing briefing, however, Golden stated that he did not object to the bank video. ECF No. 34 at 6 n.3 & 7. Now, in his objection, Golden again indicates that he objects to the bank video. ECF No. 43 at 2.

Because Golden's last submission to Judge Rau stated that he did not object to the bank video, he cannot now object to the Court's consideration of it. *Cf. Ridenour v. Boehringer Ingelheim Pharm., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012) ("Ridenour was required to present all of his arguments to the magistrate judge, lest they be waived."). To be clear, however, because there is no evidence that any officer reviewed the bank video before Golden's arrest, the Court does not regard it as part of the "facts and circumstances within the arresting officers' collective knowledge" that would be "sufficient to warrant a prudent person, or one of reasonable caution, in believing that the suspect has committed, is committing, or is about to commit an offense." *United States v. Taylor*, 519 F.3d 832, 834 (8th Cir. 2008) (cleaned up). Nevertheless, the bank video has some limited relevance in helping to corroborate the radio run (although it is worth noting that it is far from obvious that the transaction depicted in the bank video is a robbery).

of the radio run, there is an indication that officers requested a picture of the suspect. *See* Ex. B at 156 ("REQ 362 PICTURE OF SUSP").  There is also reference to a beacon being set off.  *Id.*  These statements match up with events depicted on the bus video, in which officers board the bus, a loud beeping sound is heard, and a few minutes later an officer calls out that someone has acquired a picture.

Even with the radio run, however, the government has barely offered enough evidence to defeat Golden's motion to suppress.  The radio run and the bus video together provide sufficient evidence to show that officers reasonably believed that the robber was on the bus.  But getting from that point to acquiring probable cause to arrest Golden is another matter.[4]

_____

[4]The government argues that the officers did not arrest Golden until after they found the cash and GPS tracker during a *Terry* stop.  Even assuming that the bus video and radio run establish that the officers had the right to detain and pat down Golden under *Terry*, however, the government's argument runs into a problem:  Aside from the bus video, the government offered no evidence concerning the scope of the search during which the cash and GPS tracker were found.  What little can be seen in the video suggests that that search was far more intrusive than the type of pat-down search permitted during a *Terry* stop.  This suggestion is bolstered by the fact that, as discussed below, the video depicts the officers lifting Golden's shirt while he was still on the bus (and possibly patting him down even earlier than that).  *See United States v. Aquino*, 674 F.3d 918, 926 (8th Cir. 2012) ("a search inside one's clothing (or under it in this case) is necessarily more intrusive than a pat down, and the difference between the two types of searches has constitutional significance"); *United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002) ("Because the sole justification for such a search is the protection of the officer and others, its scope must be confined to a search reasonably designed to discover concealed weapons." (cleaned up)).  Consequently, if the government could not establish that the officers had probable cause to arrest Golden before he was

(continued...)

The government contends that the officers used a photo of the robber to identify Golden, offering a still photo from the bank video (Exhibit E) along with a side-by-side comparison of that photo with Golden's booking photo (Exhibit F). But while the bus video depicts officers looking at phones during their seizure of Golden, the image or images on the phones cannot be seen. The government offers nothing—not even hearsay—to establish that the photo in Exhibits E and F was displayed on the phones in the video. The Court therefore disregards Exhibits E and F as irrelevant given the lack of evidence that the officers were aware of the photo at the time of Golden's arrest.

This leaves the government's case hanging by a thread. Luckily for the government, however, the particular sequence of events depicted in the bus video strongly suggests that the officers had a photo of Golden connecting him with the robbery, and therefore that they had probable cause to arrest him.

The bus video depicts the officers stopping the bus, after which several officers board the bus while a loud beeping sound is heard. Two of the officers proceed to the rear, where they search through the backpacks of two young black men and essentially ignore Golden (a middle-aged black man), who is sitting a few seats ahead. Finding nothing in the backpacks, one officer begins looking around on the floor and has a short

---

[4](...continued)
removed from the bus (and thus could not establish that the search of Golden was incident to a valid arrest), the Court would likely grant Golden's motion to suppress.

interaction with Golden, which (although it is difficult to see) might be a quick pat-down.  An officer standing at the front then calls out that someone has a picture.  All of the officers deboard and, after a minute or two, they reboard and head straight for Golden.  The officers raise Golden to his feet, lift up his shirt several times to look at his waist, and place him in handcuffs.  Another officer then boards the bus and hands a phone to one of the arresting officers, who looks at the screen and then holds it up near Golden's face, comparing the two.  That officer then removes Golden from the bus and walks him around to the front.  Another officer hands the arresting officer a second phone; the arresting officer peers at the phone, hands it back, and brings Golden over to a squad car.  The officer then performs a search, which is mostly obscured, but the officer can be seen putting items in an envelope.

The fact that the officers mostly ignored Golden until they were told that there was a picture, after which—having had an opportunity to look at a picture—they made a beeline for him and compared his face to something displayed on a phone, gives the Court a sufficient basis to infer that they had a photo of Golden that connected him to the robbery before they put him in handcuffs.  At the time that the officers arrested Golden, therefore, they had a description that matched him (except for an orange coat and sunglasses, which he was no longer wearing), *see* Ex. B at 153 ("SUSP WAS PASSENGER BM LATE 30'S-EARLY 40'S 5'10" MED . . . KAHKI (sic) PANTS/BRO

SHOES"); they knew that the GPS tracker (and therefore the robber) was on the bus; and they had a photo that convinced them that Golden was the robber.

The Court therefore concludes that the government has met its burden of proving that the officers had probable cause to arrest Golden while he was still on the bus. Consequently, the subsequent search during which the officers discovered the stolen cash and GPS tracker was a lawful search incident to a valid arrest. *See United States v. Edwards*, 415 U.S. 800, 802 (1974) (noting an exception to the warrant requirement for searches incident to a custodial arrest). The Court therefore overrules Golden's objection and denies his motion to suppress evidence obtained as a result of the seizure and search.

### 2. Custodial Interrogation

Golden next moves to suppress the statements that he made during his custodial interrogation, arguing that the government has not shown that he knowingly and voluntarily waived his *Miranda* rights. *See United States v. Haggard*, 368 F.3d 1020, 1024 (8th Cir. 2004) (the government bears the burden of proving the validity of a *Miranda* waiver).

Having reviewed the video of the interrogation, the Court does not find this to be a close question. The Court agrees with Judge Rau that Golden's waiver was knowing

and voluntary and rejects Golden's argument that the video is insufficient to meet the government's burden on this issue.[5]  Golden's objection is overruled.

### 3.  Show-up Identification

Finally, Golden moves to suppress the witness identifications made at the scene of his arrest.  As noted, there is no evidence in the record regarding these identifications.  The parties agree, however, that three witnesses from the bank were brought to the scene of Golden's arrest, where they saw him standing—handcuffed and in police custody.  ECF No. 25 at 1; ECF No. 34 at 13.  Based on the timestamps on the video exhibits, the show-up took place less than two hours after the robbery.

The Supreme Court has recognized "a due process check on the admission of eyewitness identification, applicable when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime."  *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012).  Determining whether an out-of-court identification should be suppressed under the Due Process Clause involves a two-step inquiry.  *United States v. House*, 823 F.3d 482, 485-87 (8th Cir. 2016).  The first

---

[5]Although the government bears the burden of proof, it may well be that, in light of the video of his interrogation, Golden would have had to make a more substantial showing of a genuine issue in order to be entitled to an evidentiary hearing on the admissibility of his custodial statements.  *See United States v. Edgeworth*, 889 F.3d 350, 352-54 (7th Cir. 2018) (holding that no evidentiary hearing was required where defendant sought to suppress a videotaped statement on the basis of vague claims that he was assaulted and coerced).  As Golden was afforded an evidentiary hearing, however, this issue is moot.

step is to determine whether the procedure was impermissibly suggestive. *Id.* at 485. If it was, the next step is to "examine whether under the totality of the circumstances the [procedure] created a substantial likelihood of misidentification at trial." *Id.* at 486; *see also United States v. King*, 148 F.3d 968, 970 (8th Cir. 1998) ("A crime victim's identification of the defendant is admissible unless it is based upon a pretrial confrontation between the witness and the suspect that is both impermissibly suggestive *and* unreliable." (cleaned up; emphasis in original)).

As Judge Rau noted, the Eighth Circuit has repeatedly held that "absent special elements of unfairness, prompt on-the-scene confrontations do not entail due process violations." *King*, 148 F.3d at 970 (cleaned up). Moreover, "[n]ecessary incidents of on-the-scene identifications, such as the suspects being handcuffed and in police custody, do not render the identification procedure impermissibly suggestive." *Id.*

Applying these principles, the Eighth Circuit has repeatedly found that circumstances identical to—or even more suggestive than—the show-up in this case were, as a matter of law, not impermissibly suggestive. *See United States v. Mitchell*, 726 F. App'x 498, 501-02 (8th Cir. 2018) (per curiam) (holding that a show-up in which the defendant "was the only person in handcuffs, was placed near a squad car, and had a light shined on him" was not "unduly suggestive"); *United States v. Pickar*, 616 F.3d 821, 827-28 (8th Cir. 2010) (show-up procedure was not impermissibly suggestive where the

defendant was handcuffed, standing in front of a squad car between a uniformed and a plainclothes officer, and had a flashlight pointed at his face); *United States v. Martinez*, 462 F.3d 903, 911 (8th Cir. 2006) (show-up was not unduly suggestive where defendant was handcuffed, had been driven to the bank in a police car, and police officers were present).

Golden argues that the government's failure to offer any evidence in response to his motion means that this evidence must be suppressed. But Golden (not the government) bears the burden of proof on the question of whether the show-up procedure was impermissibly suggestive. *See United States v. Ramsey*, 999 F.2d 348, 349 (8th Cir. 1993) ("the defendant must first show that the procedure employed was impermissibly suggestive"). Given the undisputed facts, and given the binding Eighth Circuit precedent, the Court is constrained to hold that the show-up procedure in this case was not impermissibly suggestive. Golden's motion to suppress witness-identification statements is therefore denied.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court OVERRULES defendant's objection [ECF No. 43] and ADOPTS the R&R [ECF No. 42] to the extent that it is consistent with this order. IT IS HEREBY ORDERED THAT defendant's motions to suppress [ECF Nos. 23, 24, 25] are DENIED.

Dated:  October 30, 2019                          s/Patrick J. Schiltz
                                                  Patrick J. Schiltz
                                                  United States District Judge