```
 1                   UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
 2
     ---------------------------------------------------------
 3                                  )
     United States of America,      )  File No. 19-CR-141
 4                                  )         (PJS/SER)
              Plaintiff,            )
 5                                  )
     v.                             )  Minneapolis, Minnesota
 6                                  )  May 19, 2020
     Cornett Golden,                )  11:30 a.m.
 7                                  )
              Defendant.            )
 8   ---------------------------------------------------------

 9           BEFORE THE HONORABLE PATRICK J. SCHILTZ
              UNITED STATES DISTRICT COURT JUDGE
10             (VIDEOCONFERENCE OF MOTION HEARING)

11   APPEARANCES
     For the Plaintiff:        U.S. ATTORNEY'S OFFICE
12                             JOSEPH THOMPSON, AUSA
                               JORDAN SING, AUSA
13                             300 S. 4th St., #600
                               Minneapolis, Minnesota 55415
14
     For the Defendant:        JONES DAY
15                             KRISTIN ZINSMASTER, ESQ.
                               90 S. 7th St., #4950
16                             Minneapolis, Minnesota 55402

17   Court Reporter:           DEBRA K. BEAUVAIS, RPR-CRR
                               300 S. 4th St., #1005
18                             Minneapolis, Minnesota 55415

19

20

21      Proceedings recorded by mechanical stenography;
     transcript produced by computer.
22

23

24

25
```

|||
|---|---|
|1|**P R O C E E D I N G S**|
|2|**IN OPEN COURT**|
|3|THE LAW CLERK:  United States District Court for|
|4|the District of Minnesota is now in session, the Honorable|
|5|Patrick J. Schiltz presiding.|
|6|THE COURT:  This is the case of the United States|
|7|v. Cornett Golden.  The case is Criminal No. 19-0141.  If I|
|8|could have the attorneys who are involved each make their|
|9|appearances, please, beginning with the prosecutor.|
|10|MR. THOMPSON:  Thank you, Your Honor.  Good|
|11|morning.  It's Joe Thompson and Jordan Sing on behalf of the|
|12|United States.|
|13|MR. SING:  Good morning, Your Honor.|
|14|THE COURT:  Good morning.|
|15|MS. ZINSMASTER:  Good morning, Your Honor.|
|16|Kristin Zinsmaster appearing on behalf of Mr. Golden, who is|
|17|present via video from the Sherburne County Jail.|
|18|THE COURT:  And good morning to you.|
|19|Mr. Golden, good morning.  Are you able to hear|
|20|me?|
|21|THE DEFENDANT:  Yes, sir, Your Honor.|
|22|THE COURT:  All right.  Are you able to see me as|
|23|well?|
|24|THE DEFENDANT:  Yes, sir.|
|25|THE COURT:  All right.  And were you able to hear|

1    the prosecutors and Ms. Zinsmaster?

2         THE DEFENDANT: Yes. Yes, sir.

3         THE COURT: All right. It's very important that
4    you be able to hear and see everything that happens today.
5    So if you have any trouble with the technology, let me know.
6    If your audio cuts out, wave your hand or if your video cuts
7    out, let me know. Okay?

8         THE DEFENDANT: Yes, sir.

9         THE COURT: All right. And if you want to talk
10   privately with Ms. Zinsmaster at any time today, that's
11   fine. You're welcome to do that. Just tell me you'd like
12   to talk to her and they have a way that you can talk to her
13   privately without the rest of us hearing. Okay?

14        THE DEFENDANT: Yes, sir, Your Honor.

15        THE COURT: All right. And before we go any
16   further, Mr. Golden, I just want to make sure that you
17   understand that you don't have to participate in this
18   hearing by video. That's entirely up to you. You have the
19   right to ask that we have this hearing at the courthouse
20   when you can be physically present or you can give us
21   permission to do this hearing by video.

22        Do you understand that you have that choice?

23        THE DEFENDANT: Yes, sir, Your Honor.

24        THE COURT: All right. And have you talked to
25   Ms. Zinsmaster about that?

1   THE DEFENDANT: Yes. Yes, sir, Your Honor.

2   THE COURT: All right. And are you willing to let

3   us proceed by video in this case?

4   THE DEFENDANT: Yes, sir, Your Honor.

5   THE COURT: Okay. We will go ahead then. Let me

6   just make a record of why I asked for this hearing.

7   Mr. Golden was indicted on May 14th of 2019 on two

8   counts of bank robbery. Motions practice ensued, and that

9   motions practice ended October 31st of 2019 when I denied

10  various suppression motions. I set the trial for November

11  18th, 2019.

12  On November 8th, ten days before trial, I received

13  a motion filed by Mr. Golden's attorneys. They told me that

14  he had directed them to file the motion and asked to

15  withdraw as his counsel. I held a hearing on that motion on

16  November 12th. Mr. Golden spoke at that hearing. He also

17  submitted a letter to me at that hearing. In his letter and

18  in his comments to me he expressed dissatisfaction of a

19  number of things, including with the federal defender who he

20  said had a personal vendetta against him and he suspected

21  her of conspiring with the prosecutor and his own attorneys

22  to harm him. At the end of the hearing on November 12th, I

23  denied the motion finding that Mr. Golden had not

24  established justifiable dissatisfaction with his attorneys.

25  Two days later then, on November 14th,

1   Mr. Golden's attorneys, again acting at his direction, filed
2   a motion to continue the trial so that Mr. Golden would have
3   time to decide whether to hire new counsel or represent
4   himself pro se.
5         I held a hearing on that motion on the next day,
6   November 15th, which was the pretrial conference, and
7   Mr. Golden spoke to me at that hearing.  He submitted
8   another letter.  In that letter and in his comments to me he
9   made some additional allegations against his attorneys.
10        Based on my conversations with Mr. Golden at the
11  two hearings and based on the letters that he had submitted
12  to me, I questioned whether he was competent to stand trial
13  at that time.  So later that day, that is on November 15th
14  of 2019, I ordered that Mr. Golden undergo a competency
15  evaluation and remanded him to the custody of the Attorney
16  General for that purpose.
17        So last week something made me think of Mr. Golden
18  and I realized that I hadn't heard about him in a long time,
19  and I looked and I realized it had been six months since I
20  had ordered him to be evaluated.  And it usually takes a
21  long time for evaluations, but not that long.  And I asked
22  my Courtroom Deputy to check with the Marshal Service and
23  they told me the United States Attorney's Office had never
24  notified them of my order or done anything to implement my
25  order and, as a result, Mr. Golden has been sitting in the

1   Sherburne County Jail since November with nothing happening.
2   So we're here today for me to figure out what happened and
3   where we should go from here.
4           Mr. Thompson, are you doing the talking today or
5   Mr. Sing?
6           MR. THOMPSON: Your Honor, I will. Yes.
7           THE COURT: All right. So, Mr. Thompson, can you
8   tell me what happened? I mean, my understanding is when I
9   remit somebody to the custody of the Attorney General for an
10  evaluation, your office has always picked up the ball from
11  that point, made the arrangements, kept me informed. It
12  appears nothing happened, unless I'm missing something.
13          MR. THOMPSON: Your Honor, I apologize. I didn't
14  realize that we were to deliver that order to the Marshal's
15  service. I haven't done that in a long time in terms of a
16  competency hearing and if we dropped the ball, that's on me.
17          THE COURT: Okay. Well, I think you dropped the
18  ball. I don't even remember if you were representing the
19  United States at the time, so it may not be you personally.
20  But, I mean, when I enter a competency order, I'm remitting
21  him to the custody of the Attorney General, that's you, and
22  you pick it up from there.
23          I think I have had three other orders and the U.S.
24  Attorney is always the one who gets on the phone with the
25  Bureau of Prisons and sets it up. I just don't know what to

1    say.
2              Mr. Golden, I just have to apologize to you.  You
3    should not have been sitting out there these last six
4    months.  The prosecutor just dropped the ball and nobody
5    communicated with me.  I didn't realize it.  I thought you
6    were off at your evaluation.  I had no idea you were still
7    at Sherburne County.
8              So the question is what do we do going forward?  I
9    don't know, Ms. Zinsmaster, if you have any thoughts on what
10   we should do going forward.
11             MS. ZINSMASTER:  Well, Your Honor, I do think that
12   there are some items of unfinished business pertaining to
13   the order that the Court issued on the 15th of November.  Of
14   course, Mr. Golden had requested a change in his appointed
15   counsel at which point the Court, I believe, reserved that
16   decision in light of Mr. Golden needing to receive the
17   evaluation at an FMC.
18             So since that never happened, I would certainly
19   defer to the Court as far as its desired course of action
20   with respect to Mr. Golden's counsel, but I do believe that
21   that decision is outstanding.
22             I'm here on behalf of Mr. Golden today, not
23   Mr. Morrison, and I don't know if the Court intends to
24   address our appointment at this hearing or would prefer that
25   to be done separately?

1          THE COURT: My understanding from my Courtroom
2    Deputy is that you are going to be going on maternity leave
3    sometime in the near future?
4          MS. ZINSMASTER: Yes, and I had communicated that
5    to Mr. Golden. Mr. Golden and I spoke twice last week and I
6    informed him that I had personal circumstances that would
7    not permit me to try his case this summer if he chose to do
8    that. Yes, that's right, Your Honor.
9          THE COURT: Okay. So, Mr. Golden, let me hear
10   what you think. Is it still your desire that I give you a
11   new attorney to represent you?
12         THE DEFENDANT: Yes, Your Honor.
13         THE COURT: Okay. What I think I'm inclined to
14   do, Mr. Golden, is to go ahead and appoint a new attorney to
15   represent you right away, in the next day or two. And then
16   I think it would be best for you to consult with that
17   attorney about how best to proceed at this point. He may
18   think the best thing to do is to go forward with the
19   evaluation. He may want to file some motions to dismiss
20   your indictment because of a violation of the Speedy Trial
21   Act. He may have other things -- he or she, I don't know
22   who it would be -- may have other things that he or she
23   wants to talk to you about.
24         I think the best way to proceed would be -- I
25   think it does make sense at this point for me to appoint a

1  new lawyer for you, for you to talk to that new lawyer, and
2  then your new lawyer to tell me how you want to proceed.
3              Is that an acceptable way to proceed with you?
4              THE DEFENDANT:  Yes, sir, Your Honor.
5              THE COURT:  Okay.  Let's do that, then.  As soon
6  as this hearing is over with, I will get the wheels in
7  motion to get a new attorney appointed for you.  And,
8  hopefully, that person will contact you I hope by the end of
9  the week, but if not, early next week.
10              I'm just a little concerned, Mr. Golden, because
11  the ball has already been dropped once in your case.  If you
12  don't hear from a new attorney next week, will you please
13  write me a letter or call Ms. Zinsmaster and let us know so
14  I can make sure the new attorney gets ahold of you?
15              THE DEFENDANT:  Yes, Your Honor.  But if I write a
16  letter, do I write it to the Government Center or what do I
17  -- I don't -- I don't know where to write it to.
18              THE COURT:  In the past you've just handed me
19  letters, right?
20              THE DEFENDANT:  Yes, Your Honor.
21              THE COURT:  Okay.  So I would say when we're done
22  here Ms. Zinsmaster can talk to you about how you can either
23  contact her or how you can contact me.  You're welcome to do
24  either.  If you want to write me a letter, that's fine.  If
25  you want to call her or write her a letter, that's fine.

1   Just don't sit there for more months.  Okay?  I want to get
2   your case moving.
3           THE DEFENDANT:  Yes, sir, Your Honor.
4           THE COURT:  Okay.  Mr. Golden, is there anything
5   else you wanted to say this morning?
6           THE DEFENDANT:  No, sir.
7           THE COURT:  All right.  Mr. Thompson, I would like
8   you to proceed with setting up the evaluation.  It usually
9   takes a few weeks to do that.  And I want to not waste any
10  more time on getting that set up.  It may be that
11  Mr. Golden's new attorney will want some motion practice
12  before that, but let's get Mr. Golden in the next slot, you
13  know, because there's a waiting list for this thing.  Let's
14  get him on the list and let's get the process moving.  If
15  there's anything that you can do to expedite it, given
16  what's happened, that would be appreciated.  So please talk
17  to the Bureau and let me know what they say and what the
18  prospect for getting Mr. Golden evaluated is.
19          MR. THOMPSON:  Will do, Your Honor.
20          THE COURT:  Okay.  Mr. Thompson, is there anything
21  more you wanted to say this morning?
22          MR. THOMPSON:  No, Your Honor.  Thank you.
23          THE COURT:  And, Ms. Zinsmaster, anything more?
24          MS. ZINSMASTER:  No, Your Honor.  We are all set.
25  Thank you very much.

1    THE COURT:  Okay.  So would you stay on the line
2    or I guess --
3    MS. ZINSMASTER:  I think Mr. Golden may have
4    something else.
5    THE DEFENDANT:  Now, he just said -- I thought I
6    was just been asked if I could speak with you when everybody
7    is finished.
8    MS. ZINSMASTER:  Yes.  I will set that up,
9    Cornett, absolutely.
10   THE DEFENDANT:  Yes, Ma'am.
11   THE COURT:  I think you can just go to a private
12   room now, Ms. Zinsmaster, with him or you can -- I don't
13   know how you do it.
14   MS. ZINSMASTER:  Mr. Golden, do you have questions
15   about going forward that you wanted to talk about after the
16   hearing or did you want to talk during the hearing when
17   everybody is waiting for us?
18   THE DEFENDANT:  After the hearing.
19   MS. ZINSMASTER:  Okay.  I will set up a call just
20   as I did last week, Mr. Golden, and we will get on the phone
21   again and have that conversation.
22   THE DEFENDANT:  Yes, Ma'am.
23   THE COURT:  Okay.  Ms. Zinsmaster, I mean, another
24   option is we'll all get off and you can just talk to
25   Mr. Golden.  You can just continue the conversation.  But I

1     leave it up to you as to what works.
2                MS. ZINSMASTER:  We have had very good luck with
3     the other set-up, Your Honor, thankfully to all parties
4     involved.  So I'm just going to use that secure link and get
5     on the phone with him this afternoon or tomorrow morning.
6                THE COURT:  Okay.  Sounds good.
7                All right.  So I will contact the Federal
8     Defender's Office and get Mr. Golden a new attorney
9     appointed.  And Mr. Thompson will contact the Bureau and get
10    the competency evaluation wheels turning as well.
11               Thank you all for participating in the hearing,
12    then.
13               MR. THOMPSON:  Thank you, Your Honor.
14               THE DEFENDANT:  Thank you, Your Honor.
15               (Court adjourned at 11:50 a.m.)
16                         *     *     *
17         I, Debra Beauvais, certify that the foregoing is a
18    correct transcript from the record of proceedings in the
19    above-entitled matter.
20               Certified by:  *s/Debra Beauvais*
                                 Debra Beauvais, RPR-CRR
21
22
23
24
25