<pre>
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA
 2
     ------------------------------------------------------------
 3                                    )
     United States of America,        )   File No. 19-cr-141(1)
 4                                    )           (PJS/ECW)
               Plaintiff,            )
 5                                    )
     v.                               )   Minneapolis, Minnesota
 6                                    )   March 30, 2021
     Cornett Golden,                  )   9:00 a.m.
 7                                    )
               Defendant.             )
 8   ------------------------------------------------------------

 9          BEFORE THE HONORABLE PATRICK J. SCHILTZ
              UNITED STATES DISTRICT COURT JUDGE
10           (VIDEO CONFERENCE OF FARETTA HEARING)

11   APPEARANCES
      For the Plaintiff:          U.S. ATTORNEY'S OFFICE
12                                JORDAN SING, AUSA
                                  JOSEPH THOMPSON, AUSA
13                                300 S. 4th St., #600
                                  Minneapolis, Minnesota 55415
14
      For the Defendant:         CAPITOL CITY LAW GROUP, LLC
15                                A.L. BROWN, ESQ.
                                  287 6th St. E, #20
16                                St. Paul, Minnesota 55101

17   Court Reporter:             DEBRA K. BEAUVAIS, RPR-CRR
                                  300 S. 4th St., #1005
18                                Minneapolis, Minnesota 55415

19

20
         Proceedings recorded by mechanical stenography;
21   transcript produced by computer.

22

23

24

25
</pre>

1  **P R O C E E D I N G S**

2  **IN OPEN COURT**

3  THE COURTROOM DEPUTY:  United States District

4  Court for the District of Minnesota is now in session, the

5  Honorable Patrick J. Schiltz presiding.

6  THE COURT:  Good morning, everyone.  We're here

7  today on the case of United States of America v. Cornett

8  Golden.  The case is Criminal No. 19-0141.

9  If I could have the attorneys make their

10  appearances, please, beginning with the prosecutors.

11  MR. THOMPSON:  Good morning, Your Honor.  Joe

12  Thompson and Jordan Sing on behalf of the United States.

13  THE COURT:  Good morning.

14  And Mr. Brown.

15  MR. BROWN:  A.L. Brown on behalf of Mr. Golden.

16  THE COURT:  Good morning, Mr. Brown.

17  Mr. Golden, good morning to you, sir.  Can you

18  hear me okay?

19  THE DEFENDANT:  Yes, sir.  I said, "Good morning,"

20  Your Honor.

21  THE COURT:  Okay.  There was some problem with the

22  audio, but now I hear you just fine.

23  Okay.  Are you able to hear and see me okay,

24  Mr. Golden?

25  THE DEFENDANT:  Yes, sir.

1        THE COURT:  All right.  And how about the

2  attorneys?  Were you able to see and hear them while they

3  were talking?

4        THE DEFENDANT:  Yes, sir.

5        THE COURT:  Okay.  It's very important that you be

6  able to see and hear everything that happens at this hearing

7  this morning.  So if you have any technological problems,

8  please interrupt me or whoever is speaking and let us know

9  right away.  Will you do that?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  Okay.  Mr. Golden, before we go any

12  further, I have to make sure that you know that you do not

13  have to participate in this hearing by video.  You have the

14  right to be physically present in the courtroom for this

15  hearing.  You do not have to proceed by video.  It's

16  entirely up to you whether to give up your right to appear

17  in person and give us permission to proceed by way of video.

18  It doesn't make any difference to me.

19        So are you aware of the fact that you do have the

20  right to appear in person for this hearing?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  All right.  And are you willing to

23  give up your right to appear in person and give us

24  permission to proceed by way of video?

25        THE DEFENDANT:  Yes.

1      THE COURT:  All right.  And, Mr. Brown, are you

2  satisfied that Mr. Golden knows that he has the right to

3  appear in person and he is validly giving up that right?

4      MR. BROWN:  I am, Your Honor.  And I will add, for

5  the record, he confirmed as much in writing.

6      THE COURT:  I accept Mr. Golden's waiver of his

7  right to appear in person, and we'll proceed to conduct this

8  hearing by way of video.

9      Let's proceed.  By way of background, Mr. Golden

10  is charged with two counts of bank robbery.  In November of

11  2019, shortly before his trial was scheduled to begin,

12  Mr. Golden's then counsel moved to withdraw.  I denied that

13  motion finding that Mr. Golden had failed to show

14  justifiable dissatisfaction with his attorney.

15      At the pretrial conference a few days later,

16  however, Mr. Golden submitted a letter to me in which he

17  made additional accusations against his attorney.  On the

18  basis of that letter, I continued the trial and ordered that

19  Mr. Golden undergo a competency evaluation.  That evaluation

20  found Mr. Golden to be competent.  In the meantime, however,

21  I determined that it would be preferable to appoint a new

22  attorney for Mr. Golden.  So on May 21st of last year, I

23  appointed Mr. Brown to represent Mr. Golden.

24      In January of this year, Mr. Golden sent me a

25  letter and a motion in which he expressed dissatisfaction

1    with Mr. Brown and asked that yet another attorney be

2    appointed to represent him or that he be allowed to

3    represent himself in this matter.  Specifically, in a letter

4    dated January 5th, 2021, Mr. Golden asked to proceed pro se

5    because he said Mr. Brown has a conflict of interest and

6    there has been a total breakdown in communication.  I note

7    that although this letter was dated January 5th, I did not

8    receive it until February 11th.

9         Also in a motion that was entitled, "motion for

10   ineffective counsel" and dated January 29th, 2021, a motion

11   that I received on February 3rd, Mr. Golden asked me to

12   appoint new counsel on the basis that Mr. Brown is

13   ineffective and has a conflict of interest.  There's been a

14   major breakdown in communication, and he and his counsel

15   differ as to strategy.

16        I held a hearing on Mr. Golden's request on March

17   1st.  At the conclusion of that hearing, I found that

18   Mr. Golden had not established justifiable dissatisfaction

19   with Mr. Brown's representation and, thus, I decided that I

20   would not appoint another attorney to represent Mr. Golden.

21   I told Mr. Golden that he had three choices:  he could

22   continue to be represented by Mr. Brown, he could hire his

23   own attorney at his own expense, or he could represent

24   himself.  I told Mr. Golden that he could take as long as he

25   wanted to decide his options.

1    A day or two later, I learned from Mr. Brown that

2    Mr. Golden had decided he does want to represent himself in

3    this case.  Mr. Golden confirmed his decision in a letter to

4    me dated March 11, 2021, which I received on March 15th.  So

5    we're here today to conduct a *Faretta* hearing to discuss

6    Mr. Golden's request to represent himself.

7         Mr. Golden, before I can make a decision about

8    your request to represent yourself, I have to ask you some

9    questions and you have to answer those questions under oath.

10   So if I could have you raise your right hand, please, I'll

11   swear you in.

12                    (Defendant sworn.)

13        THE COURT:  All right.  Thank you.

14   BY THE COURT:

15   Q.  So, Mr. Golden, I'm required to warn you that because

16   you are under oath if you say anything that is false, you

17   could be prosecuted for the separate crime of perjury, and

18   the government could use against you in that prosecution any

19   false statements you give under oath.  So it's important

20   that you be truthful in everything you say to me today.  Do

21   you understand that?

22   A.  Yes.

23   Q.  If you wish to talk to Mr. Brown at any time this

24   morning, you're welcome to do so.  So if I ask you a

25   question and you're not sure how to answer my question, just

1    tell me you would like to talk to Mr. Brown and we'll take a

2    break and give you a chance to talk privately to him.  You

3    can talk to him as much as you want.  I'll give you as much

4    time as you want.  Do you understand?

5    A.   Yes.

6    Q.   If there's anything I say today that you do not hear or

7    you do not understand, please be sure to let me know so I

8    can make the question clear for you.  Do not answer a

9    question that confuses you or that you do not hear clearly.

10   And do not tell me that you understand something unless you

11   really do understand it.  All right?

12   A.   Yes.

13   Q.   Okay.  So, Mr. Golden, I just have to ask you a few

14   questions at the beginning to make sure you are competent to

15   discuss these issues with me this morning.

16           Can you state your full name, please, for the

17   record.

18   A.   Cornett Golden.

19   Q.   And how old are you?

20   A.   Sixty.

21   Q.   And how far did you go in school?

22   A.   Complete or --

23   Q.   I'm sorry, can you say that again.

24   A.   Are you asking me how many years did I complete, sir?

25   Q.   Yeah.  Did you graduate from high school or did you drop

```
1    out?

2    A.  No, sir.  No, sir.  I dropped out before I graduated.

3    Q.  What grade were you in when you dropped out?

4    A.  Twelfth.

5    Q.  And have you gotten a GED since dropping out?

6    A.  No, sir.

7    Q.  Okay.  Are you literate -- that is, are you able to read

8    and write pretty well?

9    A.  Yes, sir.

10   Q.  All right.  And can you just tell me a little about your

11   employment history, what sort of jobs you have worked at

12   over time and for how long.

13   A.  I worked at -- I started out with a paper route.  I

14   worked at General Motors.  I worked at Northwest Memorial

15   Hospital.  I worked for Pan Am International Flight Academy.

16   I worked for a place before I came here called Douglas

17   Corporation.  And I worked out of a number of temp services

18   in between times.

19   Q.  Okay.  Were these mostly blue-collar jobs, that is jobs

20   where you work with your hands?

21   A.  Yes, sir.

22   Q.  Okay.  I know you're in custody, but I've got to ask you

23   a couple of questions about your use of alcohol and drugs.

24   In the last 24 hours, have you had any alcohol to drink?

25   A.  No, sir.
```

1    Q.  And are you under the influence of alcohol this morning?

2    A.  No, sir.

3    Q.  And I'm going to ask you the same question about drugs

4    and, again, to be clear, by "drugs" I mean anything that

5    could be considered a drug.  So I mean recreational drugs

6    like marijuana or cocaine, prescription drugs that you get

7    from a doctor, or even over-the-counter drugs like aspirin

8    or Tylenol.

9            In the last 24 hours, have you taken any kind of

10   drugs or medications?

11   A.  No.

12   Q.  Okay.  And are you under the influence of any kind of

13   drugs or medications today?

14   A.  No.

15   Q.  All right.  How are you feeling today physically?

16   A.  Good.

17   Q.  Good.  I'm glad to hear that.

18           And are you able to think clearly today?

19   A.  Yes.

20   Q.  Okay.  So, Mr. Golden, I need to conduct what's called a

21   *Faretta* hearing, and that's a hearing that a judge needs to

22   have with a defendant when the defendant tells the judge

23   that he wants to represent himself.  I just have to remind

24   you of some rights that you have and discuss some issues

25   with you.

1          So to begin with, I want to remind you that you do

2     have the constitutional right to be represented by an

3     attorney.  You have the right to be represented by an

4     attorney whom you hire or if you cannot afford to hire an

5     attorney, by an attorney who is appointed to represent you

6     without charge.  You also have the constitutional right to

7     represent yourself if you so choose.

8          It's my understanding from Mr. Brown and from your

9     letter to me that you want to give up your right to counsel

10    and you want to represent yourself in this case.  Is that

11    correct?

12    A.  Yes.

13    Q.  Okay.  I want to give you a chance to change your mind.

14    As I said, I also want to make sure that whatever you decide

15    your decision is fully informed.  So I'm going to need to

16    provide some information to you.  I'm required to do this

17    and also to ask you some additional questions.

18          So let me start by asking you, Mr. Golden, have

19    you received a copy of the indictment, the written charges

20    the government has made against you?

21    A.  No, I don't have it.

22    Q.  All right.  Have you at some point in the last year or

23    so seen the written charges the government has made against

24    you?

25    A.  In the last year?  I'm not sure.  It may have been a

1    little over a year since I seen it.  I don't recall the

2    document.  But for at least a little over a year.

3    Q.  I'm sorry, say that again.

4    A.  I may have been mistaken, but I think it's been over a

5    year, sir.

6    Q.  Okay.  At some point, though, you did get a chance to

7    review the written charges the government has made against

8    you?

9    A.  Slightly, yes.

10   Q.  Okay.  Well, let me tell you about the indictment.  The

11   indictment charges you with two counts of bank robbery.

12   You're aware of that, right?

13   A.  Yes, sir.

14   Q.  Okay.  And let me explain to you what the government has

15   to prove to convict you of bank robbery and the maximum

16   penalties you will face if you are convicted.

17          For you to be convicted of bank robbery, the

18   government would have to prove, beyond a reasonable doubt,

19   that on or about the dates alleged in the indictment you

20   took money from bank tellers while that money was in the

21   care, custody, control or possession of the banks; that the

22   taking of the money in each case was either by force and

23   violence or by intimidation; and, finally, that the deposits

24   at the banks were at the time insured by the Federal Deposit

25   Insurance Corporation.

1        Do you understand that this is what you are

2    charged with in this case, Mr. Golden?

3    A.   Yes.

4    Q.   Okay.  If you're convicted of these charges, both of

5    these charges, you'll be facing the following penalties:  In

6    terms of imprisonment, the maximum term of imprisonment on

7    each count is 20 years.  And I have the ability to order

8    those sentences to run consecutively, that is one after the

9    other.  So, as a practical matter, if you are convicted of

10   both charges, you could be sentenced up to 40 years in

11   prison, 20 years plus 20 years, run consecutively.

12        In terms of supervised release, you could be

13   placed on supervised release for up to three years.

14        You could be fined up to $250,000 on each count

15   for a total of $500,000.  If you are convicted, you will

16   have to pay a mandatory special assessment of $100 for each

17   count of conviction for a total of $200.

18        Under the mandatory Victim Restitution Act I would

19   be required to order you to pay restitution to the victims

20   of your crime if you are convicted.

21        I could also order you to forfeit the property

22   that's described in the forfeiture section of the

23   indictment.  And I could order you to pay the costs of

24   prosecuting you.

25        Do you understand, Mr. Golden, if you are

1  convicted of these charges, those are the penalties you will

2  be facing?

3  A.  Yes.

4  Q.  Okay.  I want to say a couple words to you about

5  supervised release.  I know you probably know this, but I

6  need to tell you anyway.

7          Supervised release is what happens after you get

8  out of prison.  So you go to prison, and serve your time,

9  and you get out of prison, and you're placed on supervised

10  release.  I would decide how long you would serve on

11  supervised release if you are convicted.  I would also

12  decide what conditions you have to follow while you are on

13  supervised release.  For example, I would order you not to

14  commit any crimes while you are on supervised release.

15          I want to warn you that if you violate any of the

16  conditions of your supervised release, you could be sent

17  back to prison and you could be kept in prison for up to two

18  more years without getting any credit for the time you

19  already served on supervised release.  Do you understand

20  that?

21  A.  Yes.

22  Q.  I also have to warn you that in the federal prison

23  system there is no parole.  So if you are sentenced to

24  prison, you will have to serve your full sentence.  You will

25  not be released from prison early on parole.  Do you

1    understand that?

2    A.  Yes.

3    Q.  I also have to warn you that because you are a United

4    States citizen and you have been charged with a felony, if

5    you are convicted, you may lose your right to vote, to hold

6    public office, to serve on a jury or to possess any kind of

7    firearm or ammunition.  Do you understand that?

8    A.  Yes.

9    Q.  Okay.  And, finally, if you are convicted, I am going to

10   consult the United States Sentencing Guidelines in deciding

11   on your sentence, but those guidelines are not binding on

12   me.  I will decide for myself the range of sentences that

13   they recommend in your case, and then I will decide for

14   myself whether to follow the recommendation, because it's

15   just a recommendation.  It's not binding on me.  In fact,

16   the law requires me to consider many things in deciding on a

17   sentence.  The recommendation of the Sentencing Guidelines

18   is just one of those many things I have to consider.

19          So it's possible if you are convicted that you

20   will get a sentence longer or harsher than the Sentencing

21   Guidelines recommend.  Do you understand that?

22   A.  Yes.

23   Q.  Okay.  So let me just ask you a couple questions about

24   your familiarity with the law.  Have you ever studied the

25   law in any kind of formal way, Mr. Golden?

1    A.  No.

2    Q.  Have you ever represented yourself before in any kind of

3    legal proceeding?

4    A.  No, sir.

5    Q.  Okay.  Are you familiar with the rules that govern the

6    way a criminal case is tried in federal court, including

7    rules about what evidence can or cannot be introduced at

8    trial?

9    A.  I didn't quite get you, Your Honor.

10   Q.  That's fine.  I asked you are you familiar with the

11   rules that govern the way that criminal cases are tried in

12   federal court?

13   A.  A little bit.  Not totally.

14   Q.  All right.  Have you ever read the Federal Rules of

15   Evidence?

16   A.  No, sir.

17   Q.  Have you read the federal rules of --

18   A.  Let me take that back.  I don't know what the federal --

19   is that like the federal proceedings?

20   Q.  Well, there is a couple different sets of rules that

21   apply in your case.  One are the Federal Rules of Evidence.

22   Those are the rules about what evidence can and cannot be

23   introduced at trial.  Then there are the Federal Rules of

24   Criminal Procedure that they basically set forth the

25   procedures that we have to follow, what hearings we have to

1   have, what has to happen at those hearings, what rights you

2   have, what deadlines apply, things like that.

3           So there's two major sets of rules that would

4   apply to your case, and I'm just wondering whether you

5   remember reading either of those sets of rules?

6   A.  The federal procedure -- criminal procedure I read parts

7   of.  I never read the evidence book.

8   Q.  Okay.  If you do go forward and represent yourself, you

9   will want to be sure to read those rules.

10           How about the Sentencing Guidelines?  Have you

11   ever looked at the United States Sentencing Guidelines?

12   A.  Yes, sir.

13   Q.  Okay.  And I think, if my memory serves, that either

14   Mr. Brown or your former attorneys or maybe both have gone

15   through the guidelines with you and talked to you about the

16   guidelines.  Is that correct?

17   A.  Somewhat.  Yes, sir.

18   Q.  Okay.  So, Mr. Golden, I want to make sure you

19   understand that if you do represent yourself, you're going

20   to be on your own.  And by that I mean if you represent

21   yourself, I will not give you any assistance or advice about

22   how you should defend yourself or about anything else.  That

23   will not be my role.  Do you understand that?

24   A.  Yes.

25   Q.  Okay.  If I see you making a mistake, I'm not going to

1    bring the mistake to your attention.  For example, if the

2    government offers evidence that's not admissible under the

3    rules of evidence, I'm not going to warn you that that

4    evidence is not admissible.  I can't be your coach.  I can't

5    be giving you advice.  Do you understand that?

6    A.  Yes.

7    Q.  Okay.  The rules that govern this case, as I've already

8    mentioned some of them -- the rules of evidence and the

9    rules of criminal procedure -- are pretty technical and

10   complex, and even experienced attorneys and judges sometimes

11   have trouble with them.

12            If you represent yourself, I'm not going to relax

13   any of the rules for your benefit.  You are going to have to

14   follow the rules just like the prosecutors have to follow

15   the rules.  Do you understand that?

16   A.  Yes.

17   Q.  All right.  If you represent yourself, you also are

18   going to have to observe proper decorum in the courtroom.

19   You will have to behave civilly and respectfully, which

20   you've always done when you have appeared before me.

21            You will also have to obey my rulings even if you

22   disagree with my rulings.  For example, if I order you not

23   to say something in front of the jury, you have to obey my

24   order even if you disagree with me.  If my order is wrong

25   and you're convicted, then you will be able to ask the court

1   of appeals to review my order and reverse your conviction.

2   In the meantime, though, you have to obey my orders.  Do you

3   understand that, Mr. Golden?

4   A.  Yes.

5   Q.  All right.  And will you commit to me that you will

6   follow the rules and you will follow my orders if you

7   represent yourself?

8   A.  Yes.

9   Q.  Okay.  I have to warn you that if you do refuse to obey

10  the rules or my orders -- if, for example, you were to

11  persist in trying to introduce evidence that I ruled as

12  inadmissible, I could hold that you have forfeited your

13  right to represent yourself and I could order Mr. Brown to

14  step in and take over your representation.  So I just want

15  you to understand that that would be the consequence if you

16  were to fail to obey the rules and my orders.  Do you

17  understand that?

18  A.  Yes.

19  Q.  All right.  I also have to warn you, Mr. Golden, that if

20  you engage in any delaying tactics or any other kinds of

21  misconduct while representing yourself, I may hold that you

22  have forfeited the right to represent yourself and order

23  Mr. Brown to take over your defense.

24          The Eighth Circuit, which is the appellate court

25  that I report to, has said -- and I'm going to quote to you

1  from one of their opinions -- "defendant is not entitled to

2  use the right of self-representation as a tactic for delay,

3  for disruption, for distortion of the system or for

4  manipulation of the trial process."

5           So if I get, at any point, the sense that you're

6  using your right to represent yourself to delay this

7  proceeding or to mess around with this proceeding, I could

8  order that you have forfeited your right to represent

9  yourself and ask Mr. Brown to step in and take over your

10 defense.  Do you understand that?

11 A.  Yes.

12 Q.  Okay.  I also want to make sure you understand that if

13 you do elect to represent yourself, you can't later complain

14 on appeal or otherwise that your self-representation was

15 inadequate.  In other words, you can't ask a judge to

16 overturn your conviction because you did not have adequate

17 representation when it was you that decided to represent

18 yourself.  Do you understand?

19 A.  Yes.

20 Q.  Okay.  The last thing I want to warn you about is in a

21 letter to me you said that you have some motions you want to

22 submit.  I want you to understand that if you do proceed

23 pro se, it doesn't mean that we rip everything up and we

24 start the case all over again.  Some deadlines have already

25 passed, so it may be too late for you to file the motions

1    that you want to file.  I don't know what kind of motions

2    you're talking about.  You can go ahead and file them, but

3    it's possible that I'm going to tell you that you are too

4    late to file those motions.

5              So I want to make sure you understand that

6    stepping in and representing yourself you don't go back to

7    square one.  You pick up the case as it stands today.  Do

8    you understand?

9    A.   Um, I'm not familiar with the deadlines, Your Honor.

10   Which motion deadline is already expired?

11   Q.   Well, I can't tell you that sitting here.  Mr. Brown can

12   talk to you after the hearing.  But at the very beginning of

13   the case, the magistrate judge enters a scheduling order and

14   in that order he or she -- I can't remember which -- sets

15   forth certain deadlines for bringing motions and making

16   certain requests and exchanging information.

17             So I don't know what kind of motions you want to

18   bring.  They might be timely.  They might not be timely.

19   That's one of the things you'll have to figure out if you

20   represent yourself.  But I'm just warning you that we're not

21   starting over from square one.  Do you understand?

22   A.   I can understand that part, Your Honor.

23   Q.   Okay.

24   A.   But I wanted to be sure on which -- can I speak with

25   Mr. Brown a minute?

1   Q.  Yep, you can.  We'll put you in a separate room with

2   Mr. Brown.

3              THE COURT:  Mr. Brown, you let us know when you

4   are ready to rejoin us.

5              (A discussion was held off the record.)

6   BY THE COURT:

7   Q.  Mr. Golden, you are back.  Are you able to see and hear

8   me?

9   A.  Yes, sir.

10  Q.  Were you able to discuss whatever you wanted with

11  Mr. Brown?

12  A.  Yes, sir.

13  Q.  Okay.  I will proceed, then.

14             So, Mr. Golden, I intend to appoint Mr. Brown to

15  serve as standby counsel.  That means that Mr. Brown will

16  remain available to assist you by answering your questions.

17  He will also be available to take over your defense if I

18  decide that that is necessary or if you should change your

19  mind about representing yourself.

20             I want to be clear with you that by standby

21  counsel Mr. Brown will be available to you to consult with,

22  but he will not be representing you.  So you can't decide,

23  for example, that he will file some motions and you will

24  file others or that he will argue some matters and you will

25  argue others or he will question some witnesses and you will

1    question others.  You remain solely responsible for

2    representing yourself and trying your case.  Do you

3    understand?

4    A.  Yes.

5    Q.  All right.  Mr. Brown will be available to answer your

6    questions, but he's not going to give you unsolicited

7    advice.  In other words, if he sees you making a mistake, he

8    is not going to bring it to your attention on his own.  He

9    will give you his opinion only if and when you ask for it.

10          So if you never ask him any questions, he is not

11   going to say anything to you.  It will be up to you to ask

12   questions of him.  He's not going to volunteer advice.  Do

13   you understand that?

14   A.  Yes.

15   Q.  Okay.  And do you have any objection to Mr. Brown being

16   appointed as standby counsel and being available to you?

17   A.  No, sir.

18   Q.  Okay.  So, Mr. Golden, let me just say a few more words

19   to you and then we will wrap this up.  I have to advise you

20   that, in my opinion, a trained lawyer, such as Mr. Brown,

21   will defend you far better than you will defend yourself.  I

22   think it is not wise of you to represent yourself,

23   especially in a case like this where you face the risk of

24   what could be, practically speaking, a lifetime in prison.

25   As I said, you're looking at a maximum of 40 years in

1    prison, and at your age that could be the rest of your life.

2           Legal training and legal experience are very

3    important in defending a criminal case in federal court.

4    It's highly likely that an attorney, such as Mr. Brown, will

5    be aware of legal issues and legal arguments that you are

6    not going to be aware of.

7           It's also highly likely that Mr. Brown will be

8    aware of deadlines and other procedural rules that you will

9    not be aware of, and your lack of knowledge may cause you to

10   lose the ability to raise certain issues or to make certain

11   arguments.

12          There is an old saying, someone who represents

13   himself has a fool for a client.  There is a reason that is

14   a well-known saying.  Representing yourself in a complicated

15   federal criminal case like this one is a very risky matter.

16   In my experience, I have had, I don't know, six, seven,

17   eight defendants represent themselves in my career and

18   typically they do a very poor job and typically things do

19   not turn out very well for them.

20          So you have the right if you wish to represent

21   yourself, but I want to tell you -- I want to urge you not

22   to do so and to permit Mr. Brown to continue to represent

23   you.

24          So I'm not asking you to agree with me, but I'm

25   asking do you understand the advice that I have just given

1    you?

2    A.  Yes, I understand.

3    Q.  Okay.  And is it still your desire to represent

4    yourself?

5    A.  Yes, sir, Your Honor.

6    Q.  Okay.  Are you making this decision to waive your right

7    to be represented by counsel voluntarily and of your own

8    free will?

9    A.  Yes.

10   Q.  Has anyone forced you or threatened you or coerced you

11   or done any violence to you or to anyone else in order to

12   make you waive your right to counsel?

13   A.  No, sir.

14   Q.  Okay.  Before we conclude this hearing, do you have any

15   questions for me or for Mr. Brown?

16   A.  No, sir, Your Honor.

17   Q.  All right.

18   A.  Yes, I do.  I'm sorry.

19   Q.  All right.

20   A.  The Court would be letting me know of any deadlines that

21   come up or anything, though, right?  Am I correct?

22   Q.  No.  Sometimes deadlines appear in court orders, and you

23   will be getting copies of those orders and in that way I

24   would let you know of deadlines.  There are other deadlines

25   that appear in the rules, like the Federal Rules of Criminal

1    Procedure.  I don't make attorneys aware of that.  Attorneys

2    are expected to know what's in the Federal Rules of Criminal

3    Procedure.  So you'll want to be careful about that.  You

4    will want to read those rules and if you have questions, you

5    will want to ask those questions of Mr. Brown.

6    A.  Yes, sir.  Yes, sir.

7    Q.  Okay.  Any other questions for me or for Mr. Brown?

8    A.  No, sir.

9    Q.  All right.

10             THE COURT:  Mr. Brown, is there anything else you

11   think I should cover with Mr. Golden?

12             MR. BROWN:  Nothing that needs to be covered with

13   Mr. Golden, Your Honor, but I do have some questions about

14   the logistics of the case if this is an appropriate time?

15             THE COURT:  Sure.  Go ahead.

16             MR. BROWN:  I imagine the Court is interested and

17   just for scheduling -- as standby counsel I have to be

18   present for it -- will the Court be issuing a trial order?

19             THE COURT:  I think we already did issue a trial

20   order.  Let me just ask the prosecutors.  I can look it up

21   here.  I know it's set for August.

22             MR. SING:  August 2nd, Your Honor.

23             THE COURT:  August 2nd is when we're set?  I

24   thought we had moved that.  Hold on just a second here.

25             MR. BROWN:  The latest docket entry, if I can be

1    of help, is 96 setting it for August 2nd.  The docket is at

2    101, and I don't see any change to the trial order after the

3    August 2nd date.

4              THE COURT:  Okay.  I'm going to have my courtroom

5    deputy contact you then because I am going to be out of town

6    that week and I know she arranged to switch -- you know, the

7    way we're doing criminal trials now, we only have one

8    courtroom that we can use because of the pandemic and so we

9    have to kind of switch with each other.

10             I'm pretty sure that Mr. Golden's trial has been

11   rescheduled, but I don't know the date off the top of my

12   head.  So I will ask my courtroom deputy to be in contact

13   with you.  But, yeah, Mr. Brown, we'll need you at trial

14   because at any moment I can ask standby -- I haven't had to

15   do it yet fortunately in my career, but other judges have

16   asked standby counsel to step in and take over.

17             You will want to continue to follow all the

18   filings on the docket, and I will need you at any kind of

19   in-person hearings that we have, including the trial itself.

20   Caryn will keep working with you.  You will be in the loop

21   on the scheduling of things.

22             MR. BROWN:  I appreciate that, Your Honor.  I just

23   wanted to make sure that I had -- the federal court trial

24   dates tend to go on the date set.

25             THE COURT:  They do.  It's not like state court,

 1   especially these days when we have to reserve Judge

 2   Tunheim's courtroom to try a case.  It's possible by August

 3   that we'll be back in our own courtrooms.  It just depends

 4   on how quickly people are vaccinated.  You know, I think

 5   once we get over half of the state vaccinated, the judges

 6   will talk about moving the trials back into their own

 7   courtrooms.  At that point we should be able to get

 8   vaccinated jurors and vaccinated defendants.  I'm told they

 9   will start vaccinations at Sherburne County soon.

10           Mr.  Golden, have they started vaccinating the

11   detainees out there yet?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  Have you be vaccinated?

14           THE DEFENDANT:  No, sir.

15           THE COURT:  Okay.  I'm told it's on its way, that

16   they are working on getting the inmates vaccinated out

17   there.

18           THE DEFENDANT:  They did start, and some got it

19   and some ain't.  They haven't done the whole jail yet,

20   though.

21           THE COURT:  They are probably starting with guys

22   that have conditions that make them vulnerable.  And you

23   being sixty and it sounds like in pretty good health, you

24   are probably not on that initial list.

25           Okay.  Let's see.  Mr. Thompson, is there anything

1    else that you want me to cover with Mr. Golden?

2            MR. THOMPSON:  Your Honor, the only thing I would

3    add is I would be remiss not to tell Mr. Golden I think this

4    is an incredibly foolish decision.  And I have been doing

5    this for a long time, and I have had defendants decide to go

6    pro se.  It never ends well.  Almost always what happens is

7    at some point through the trial the defendant essentially

8    gives up because he realizes he doesn't know how to try a

9    case.  It's a lot more difficult than it looks.

10           And, Mr. Golden, we will try this case fairly, but

11   we will pull no punches, despite the fact that you are

12   pro se.  And if you think that you are going to have a

13   motion or get to delay the trial based on this, I think

14   Judge Schiltz has already told you that's probably not going

15   to happen.

16           So I would urge you not to do this.  This is not a

17   good decision.  Mr. Brown is an experienced lawyer, and I

18   promise you you will have a better result with Mr. Brown

19   representing you.  Thank you.

20           THE COURT:  So, Mr. Golden, you have heard my

21   advice and you have heard the prosecutor's advice, but

22   ultimately the decision is yours.  In light of all we've

23   discussed, is it still your wish to reject Mr. Brown's

24   representation and represent yourself instead?

25           THE DEFENDANT:  Your Honor, well, at any other

1    length of time he's on standby, so I can let him know if I

2    wish not to continue like this?

3              THE COURT:  Yeah.  If you change your mind, you

4    can let me know that and Mr. Brown will take over your

5    defense.  But I want to warn you you can only do that once.

6    This isn't tag team wrestling where you can tag him in and

7    then you tag in and he tags in.  So you will get one crack

8    to have him take over your defense, but that's it.  Once he

9    takes over your defense again, I'm not going to allow you to

10   represent yourself.  So if you do change your mind, you can

11   have Mr. Brown step back in and represent you.

12             THE DEFENDANT:  Okay, Your Honor.

13             THE COURT:  But remember that at that point he may

14   not be as up on the case as he would be if he was

15   representing you all along.  I mean, I know he will do the

16   best he can, but he may not be as effective as he would be

17   if he was representing you the whole time.  So you are going

18   to be running that risk.  Do you understand that?

19             THE DEFENDANT:  I didn't get what you just said.

20             THE COURT:  I'm sorry, I didn't understand you.

21             THE DEFENDANT:  I didn't get totally what you just

22   said, Your Honor.

23             THE COURT:  You did not hear me?

24             THE DEFENDANT:  I totally didn't hear everything

25   you said.

1          THE COURT:  I'm sorry.  It's with your mask on

2    sometimes it's a little hard for me to understand you.  I'm

3    sorry.  I will try that again.

4          So if you decide later on that you want to change

5    your mind and represent yourself -- I'm sorry, and have

6    Mr. Brown represent you, I will allow you to do that.  That

7    is, I will allow Mr. Brown to take over your defense.  But

8    you can only -- but once that happens, you can't tell me now

9    I want to go back to representing myself again.  You can't

10   keep changing your mind.  Do you understand?

11         THE DEFENDANT:  Yes, sir, I understand.

12         THE COURT:  So you will get one chance and one

13   chance only to have Mr. Brown take over your defense.  After

14   that you're stuck with him.  I'm not going to let you

15   essentially replace him again with yourself.  Do you

16   understand?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Okay.  And what I was warning you

19   about and what you might not have heard is if you do -- in a

20   few weeks or whenever or at trial -- say that you want

21   Mr. Brown to take over your defense, he may not be as

22   effective as he would be if he was representing you the

23   whole time.  I mean, he may not be as up on the case as he

24   is now.  So that's a risk you will run.  Do you understand?

25         THE DEFENDANT:  Okay.  Well, I'm not trying to use

1   any tactics, Your Honor, to courts, none of that.  It's my

2   life.  I'm just trying to be sure about what I do.

3               THE COURT:  Yep.  That's why we've spent the last

4   hour having this conversation.  I know how important it is,

5   and that's why I want to make sure you are fully informed.

6               So how do you want to proceed?  Do you want to

7   represent yourself or do you want Mr. Brown to continue to

8   represent you?

9               THE DEFENDANT:  At the present time, Your Honor, I

10  would -- I will myself.  If I change my mind, then

11  Mr. Brown, I will give him a call and let him know to --

12  that I would like him to represent me.

13              THE COURT:  Okay.  I find that -- I'm sorry, go

14  ahead, sir.

15              THE DEFENDANT:  I have a question.  You keep

16  saying "trial."  The trial date is before the date that you

17  said, August 2nd, or is it after?

18              THE COURT:  I'm not sure.  It was originally

19  scheduled for August 2nd.  I can't do it August 2nd.  I know

20  that my courtroom deputy arranged with another judge for me

21  to switch weeks with him or her.  I don't know whether that

22  week is before August 2nd or after August 2nd.  I don't know

23  what the week is.  I thought we had sent out a new trial

24  notice.  I was mistaken.  But my courtroom deputy will be in

25  contact with everybody soon and let you know what the new

1  date is.

2  THE DEFENDANT:  So can you also let them know to

3  inform me, send me a letter letting me know what the outcome

4  is?

5  THE COURT:  I will.  We'll inform Mr. Brown.  He

6  will pass that on to you.  And I will send you a letter

7  directly to the Sherburne County Jail.  So you will get --

8  we'll let you know in two different ways.

9  THE DEFENDANT:  Yes, sir.  I really appreciate

10  that.

11  THE COURT:  Okay.  All right.  I find, then, that

12  the defendant, Cornett Golden, is mentally competent and

13  capable of waiving his right to counsel.  And I find that

14  Mr. Golden's waiver of his right to counsel is free,

15  voluntary, knowing, and informed.  I, therefore, grant

16  Mr. Golden's request that he be permitted to represent

17  himself during the remainder of these proceedings.

18  I also appoint Mr. Brown to serve as standby

19  counsel for Mr. Golden.  As I've discussed, Mr. Brown will

20  be available to assist Mr. Golden if Mr. Golden wishes, and

21  he will be available to take over the representation if

22  Mr. Golden changes his mind or if I so order.

23  All right.  That is all I have for you today.

24  Mr. Golden, is there anything more you want to talk about

25  this morning?

1          THE DEFENDANT:  No, sir, Your Honor.

2          THE COURT:  Okay.  And, Mr. Thompson, anything

3    more on the government's side?

4          MR. THOMPSON:  No, Your Honor.  Thank you.

5          THE COURT:  Okay.  I will have Caryn get ahold of

6    you hopefully today sometime and let you know about the date

7    for the trial.

8          All right.  Thank you, everyone.

9          (Court adjourned at 10:04 a.m.)

10                        *      *      *

11          I, Debra Beauvais, certify that the foregoing is a

12    correct transcript from the record of proceedings in the

13    above-entitled matter.

14          Certified by:   *s/Debra Beauvais*
                            Debra Beauvais, RPR-CRR

15

16

17

18

19

20

21

22

23

24

25