UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-141 (PJS/ECW)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | **GOVERNMENT'S SENTENCING POSITION** |
| CORNETT GOLDEN, | |
| Defendant. | |

Consistent with the plea agreement and the parties' joint motion for a downward variance, the United States respectfully recommends the Court impose a sentence of 84-months' imprisonment followed by a 3-year term of supervised release. *See* Dkts. 120, 161. Such a sentence holds Defendant Cornett Golden accountable, recognizes his unique history and circumstances, and broadly achieves the goals of 18 U.S.C. § 3553.

## Golden's Criminal Conduct

During a single week in March 2019, Defendant Cornett Golden robbed two different Twin Cities banks. At the time, Golden—a 61-year-old African American man—was experiencing significant instability. PSR ¶¶ 70; 82. He had lost stable employment and was residing in a halfway house because he had no permanent residence. *Id*. His decision-making at this time, by his own admission, was clouded by significant alcohol and drug use. PSR ¶ 14. Golden ultimately resorted to crime to pay his bills. *Id*.

On March 27, 2019, Golden entered a Minneapolis TCF Bank wearing a distinctive jacket. PSR ¶ 7. He approached a teller, directed her not to look at him, and demanded the money in her teller drawer. *Id*. Golden then put his hand in his jacket

pocket and placed it on the teller counter. *Id.* Although Golden did not possess a weapon, the teller reasonably interpreted his actions as indicating he had a weapon in his jacket pocket. *Id.* The teller gave Golden approximately $400, which included bait bills and a GPS tracker. PSR ¶ 8. This entire interaction was captured on security video. Golden quickly fled the bank and ditched his orange jacket in a nearby garbage can. *Id.* Law enforcement tracked the GPS tracker and eventually located Golden riding public transit. PSR ¶ 9. The $300 in Golden's pocket included the bait bills and GPS tracker. *Id.* The victim teller subsequently identified Golden as the bank robber. *Id.*

Golden admitted to the March 27 bank robbery during a post-*Miranda* interview. *Id.* His explanation aligned with the specifics of the robbery, and he explained he was hard-pressed for cash at the time. *Id.* Golden also admitted to robbing $2,500 from a Minneapolis Firefly Credit Union on March 22, 2019. PSR ¶ 29. Once again, his admission matched the specifics of that robbery, including the bank's location, a description of the victim teller, and the amount of money stolen. *Id.*

On June 30, 2021, pursuant to a plea agreement, Golden pleaded guilty to the March 27 bank robbery. Dkt. 119. The parties' plea agreement included numerous stipulations, including an applicable Guidelines calculation and Golden's agreement to pay $2,900 in restitution for both robberies. Dkt. 120 at ¶¶ 7, 11. Consistent with the parties' plea agreement, the parties also negotiated a joint motion for a downward variance, which the government has filed contemporaneous with this sentencing position. Dkt. 161.

## The Presentence Report

The PSR calculated an applicable Guidelines range of 151-188 months based on a total offense level of 29 and a criminal history category of VI. PSR ¶ 91. This calculation aligns with the parties' plea agreement and joint motion for downward variance. PSR ¶ 93; Dkts. 120, 161. But it appears Golden maintains an objection to his qualification as a career offender, given his framing of the issue as "Challenge and Objection to the Career Criminal Enhancement." Dkt. 159 at 4.[1] The government construes Golden's other arguments in his position paper—regarding his age, criminal history score, and health—as various potential bases for granting a downward variance, which the government addresses in the next section.

As relevant here, Golden qualifies as a career offender if his current bank robbery is a crime of violence and he has two prior felony convictions for a crime of violence. U.S.S.G. § 4B1.2(a)(2). Prior felony convictions are eligible under Section 4B1.2 only if the imposed sentence occurred within 15 years of the defendant's commission of the instant offense. *See* U.S.S.G. § 4B1.2, cmt. 3 (incorporating timing requirements of § 4A1.2). A revocation of supervised release from such a conviction can affect the calculation, as the 15-year time constraint runs from the date of last release. U.S.S.G.

---

[1] Golden's argument on this issue is inconsistent with the plea agreement and joint motion for downward variance. However, after numerous meetings with Golden, the government believes this inconsistency is the result of a fundamental procedural misunderstanding. Golden has been steadfast in his conversations with the government regarding the plea agreement and his acceptance of responsibility.

§ 4A1.2(k)(2). The commission of Golden's instant offense is March 27, 2019, which tethers the 15-year lookback period to offense occurring on or after March 27, 2004.

The PSR identifies two prior convictions as predicate crimes of violence for purposes of Golden's qualification as a career offender. The first is Golden's June 26, 1996 bank robbery conviction, which resulted in sentence of 78-months' imprisonment followed by a 3-year term of supervised release. PSR ¶ 39. It is settled law that federal bank robbery is a crime of violence for purposes of Section 4B1.2. *United States v. Harper*, 869 F.3d 624, 626-27 (8th Cir. 2017). Although it appears this conviction would fall outside the March 27, 2004 lookback period, Golden's last release from this offense occurred on March 30, 2005. PSR ¶ 39. Accordingly, Golden's 1996 bank robbery conviction qualifies as a predicate offense under Section 4B1.2.

The second qualifying offense identified by the PSR is Golden's June 2, 2011 felony domestic assault conviction pursuant to Minn. Stat. §609.2242, subd. 4, which resulted in a sentence of 32-months' imprisonment stayed, 365-days' imprisonment, and a 5-year term of probation. PSR ¶ 46.[2] The Eighth Circuit has determined that a conviction under Minn. Stat. § 609.2242, subd. 4 is a crime of violence under the Guidelines. *See, e.g.*, *United States v. Romero-Orbe*, 853 F.3d 1333, 1334 (8th Cir. 2017). The conviction also occurred well within the 15-year lookback period. Accordingly,

---

[2] The PSR assesses this conviction 3 points. Because the 32-month term was entirely stated, it appears the 365-day term would govern and only 2 points should be assessed. *See* U.S.S.G. §4A1.1(b); §4B1.2(b)(2) (defining "sentence of imprisonment" to refer only to maximum unsuspended portion of a sentence). Regardless, Golden exceeds 13 total points and still falls within Criminal History Category VI—independently or by virtue of being a career offender.

4

Golden's 2011 felony domestic assault conviction also qualifies as a predicate offense under Section 4B1.2.

Because Golden has two predicate crimes of violence within the relevant 15-year lookback period, he qualifies as a career offender under Section 4B1.2 of the Guidelines. His objection to this aspect of the PSR—should he persist with it—should be overruled.

## The Appropriate Sentence

Golden's Guidelines calculation appropriately reflects many of the realities of his misconduct.  The parties agree, however, that his applicable Guidelines range does not account for several significant factors—including how Golden's age intersects with his technical qualification as a Career Offender, that Golden did not actually possess a weapon or employ physical violence, his prompt confession, and his ongoing efforts to better himself during his period of incarceration.  Consistent with the parties' plea agreement and joint motion for a downward variance, the government respectfully recommends a sentence of 84-months' imprisonment followed by a 3-year term of supervised release.  Such a sentence is sufficient, but not greater than necessary, to hold Golden accountable, account for his significant criminal history, recognize his unique history and characteristics, and still achieve the deterrent goals of 18 U.S.C. § 3553(a).

   A.   Nature & Seriousness of the Offense

Bank robbery is a serious and dangerous offense.  Golden entered a public place, confronted a person doing their job, and subjected that individual—and everyone else present—to a dangerous situation.  Although Golden did not possess a weapon or threaten explicit harm, the victim teller interpreted his actions as suggesting he did have a weapon.  That is a traumatizing and unsettling experience.  Golden then fled,

boarded public transportation, and was arrested surrounded by members of the public. Put simply, Golden prioritized his financial need over public stability and safety. He is lucky that no one interfered with his plans, was physically injured, or severely traumatized. It is all the more aggravating that Golden engaged in this conduct not once, but twice, within the span of a week.

B.      History & Characteristics of the Defendant

Golden endured a tumultuous upbringing and has struggled to find stability in his personal life. PSR ¶¶ 60-70. He grew up with a single parent who worked the night shift to make ends meet, observed significant substance abuse at a young age, and endured his own abuse. *Id.* Golden dropped out of high school and began his own journey with substance abuse. PSR ¶¶ 66-69, 75. Golden's substance abuse not only was a significant issue in maintaining his personal relationships but is directly correlated to his significant criminal history. *Id.*

Beginning at age 25—and excluding traffic offense—Golden has had 18 distinct criminal contacts. PSR ¶¶ 34-58. These offenses include narcotics possession, weapons violations, the 1996 bank robbery, assault, and forgery. *Id.* Most aggravating, however, are Golden's *seven* adjudications for domestic violence. PSR ¶¶ 36-38, 44-47. These circumstances included Golden threatening violating no-contact orders, stalking people, threatening the lives of his victims, and brandishing weapons. Numerous interactions are particularly violent and involved Golden striking his victims—with his fists or other items—and one included an attempted strangulation. *Id.* Golden's criminal history is a significant aggravating factor, and the parties' plea agreement holds Golden accountable at the highest criminal history category.

The timing of Golden's current offenses somewhat mitigate this history. As discussed above, Golden's failure to adjust to supervision kept his 1996 bank robbery conviction alive for almost a decade, until his last release related to it in 2005. Although undeniably responsible for that misconduct, Golden's criminality had significantly de-escalated in the years leading up to his current offense. His last violent offense occurred in 2011, and his last criminal conduct of any kind occurred in 2017. PSR ¶¶ 46, 48. On this record, the government asserts that Golden's 23-year-old bank robbery conviction does not justify a 67-83 month increase in his applicable Guidelines range. *See* Dkt. 120, Plea A'gmt at ¶¶ 7(g), (j). Instead, given these realities, the government asserts that Golden's Guidelines range had he not qualified as a career offender—84-105 months (22/VI)—better accounts for Golden's unique history and characteristics.

C.    Need for Deterrence

Golden requires a sentence that accomplishes both specific and general deterrence. But the government asserts that Golden's acceptance of responsibility, efforts to better himself while incarcerated, and his age all inform this analysis.

Golden accepted responsibility for his crimes at the time of his arrest and his acceptance has become more fulsome over time. Golden has completed 103 courses during his incarceration to better himself and focus on the future. Dkt. 160. His letter to the Court expresses his regret and hope for the opportunity to spend his "twilight years" with his family. Dkt. 158. Golden currently is 61 years old and, given his serious crime and significant criminal history, he is facing a significant sentence. It is likely he will be over 65 and approaching 70 when he is released.

The government submits that an 84-month sentence is sufficiently severe to achieve deterrence, while also avoiding a sanction that will discourage Golden from continuing to better himself for his eventual re-entry into society. These goals are bolstered by the parties' joint recommendation for a 3-year term of supervised release.

## Conclusion

For these reasons, and those stated in the parties' joint motion for a downward variance, the government respectfully asserts that a sentence of 84-months' imprisonment followed by a 3-year term of supervised release fully comports with the United States Sentencing Guidelines and the goals of Title 18, United States Code, Section 3553(a).

Dated: April 22, 2022

Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*/s/ Jordan L. Sing*

JORDAN L. SING
JOSEPH H. THOMPSON
Assistant United States Attorneys